WHITMAN SADDLE Co. *v.* SMITH *et al.*

*(Circuit Court, D. Connecticut.  April 6, 1889.)*

1. PATENTS FOR INVENTIONS—DESIGN—PATENTABILITY—UTILITY—SADDLES.
     Design letters patent No. 10,844, September 24, 1878, to Royal E. Whitman, describe a design for saddles in which the pommel rises at the fork to a point level or nearly level with the raised and prolonged cantle, and the pommel on its rear side falls nearly perpendicularly for some inches, when it is joined by the line forming the profile of the seat.   The saddle has a special utility consisting in its adaptation to the lines of the horse's back and shoulders, the roominess of its seat, and in its permitting the rider's knees to come in close contact with the horse.   *Held*, that the design is useful, so as to be patentable under Rev. St. § 4929, authorizing the issue of a patent for any new, useful, and original shape or configuration of any article of manufacture.

2. SAME—NOVELTY.
     The military Jenifer saddle, or the Jenifer-McClellan saddle, had a high, peaked cantle, and a high, prominent pommel, and the Granger saddle had a "cut back" pommel and a low, broad cantle.   *Held*, that though the Whitman design had prominent features of each of those saddles, and united two halves of old trees, it still had patentable novelty.

3. SAME—INFRINGEMENT.
     The photograph shows the point of junction of the rear side of the pommel with the profile of the seat to be an angle, while it is a curve in the manufactured articles of both plaintiff and defendant.   Defendant's saddle being an exact reproduction of that made by plaintiff, and there being a substantial sameness in the patented and manufactured designs as a whole, which would deceive an ordinary purchaser, *held*, that defendant infringes.

In Equity.

Bill by the Whitman Saddle Company against Charles B. Smith and others, to restrain the infringement of a patent.

*Benj. F. Thurston,* for plaintiff.

*Wm. Edgar Simonds,* for defendants.

SHIPMAN, J.   This is a bill in equity which is based upon the alleged infringement of design letters patent No. 10,844, dated September 24, 1878, to Royal E. Whitman, for a design for saddles.   In the patent the inventor says that the nature of his design is fully illustrated in the photographic picture which accompanies the specification.   He further says that the pommel rises at the fork to a point on, or nearly on, a horizontal level with the raised and prolonged cantle, and that the pommel on its rear side falls nearly perpendicularly for some inches, when it is joined by the line forming the profile of the seat.   He then proceeds to carefully describe, by reference to the letters contained in the picture, the lines and curves of his design, which description it is useless to reproduce here, in the absence of the picture, whose presence is necessary to make the description plain.   The patentee then says:

"I am aware that portions of the curves employed by me have been used in the designing of saddles; but, when combined with a longitudinally slotted tree, the lines I employ to give the profile form a new design for saddles, and giving the general idea, in the front, lower, and rear lines, of a sea-fowl or vessel modeled upon the same curves, and by these curves and lines giving the impression of lightness, grace, and comfort, that could not as well be

conveyed by any'others, as the impression of comfort is given by the large amount of bearing surface obtained without undue elevation above the back of the animal, combined with the large seat for the rider, and lightness and grace by the small surface of tree shown in vertical plan, coupled with the form in which it is presented."

The claim is for "the design for a riding saddle, substantially as shown and described." The design is one of especial gracefulness, and is a quickly recognized, marked improvement, in the beauty of its lines and curves, upon its predecessors; so much so, that it is a new shape, which has a utility of its own, consisting in the adaptation of the saddle to the lines of the horse's back and shoulders, the roominess of its seat, and its ability to give the rider's knees close contact with the horse. Whether the shape is, in all respects, superior to other shapes, is not important. The patent comes within the clause of section 4929 of the Revised Statutes, which authorizes the issuing a patent to any person who, by his own industry, genius, efforts, and expense, has invented and produced "any new, useful, and original shape or configuration of any article of manufacture." The new and original shape must also be useful, and the utility must be consequent upon the shape. It is not necessary, in this case, to define the minimum of utility which is sufficient, because there was, in this design, an obvious utility apart from its beauty. The shape of an article which furnishes added convenience to the user, or which makes the article better adapted, in some respects, to the purposes for which it is used, can properly be said to be useful, within the meaning of section 4929, although the article thus furnished with a new shape could not be the subject of a functional patent for a new or improved manufacture.

The J. S. Sullivan Saddle-Tree Company, a corporation in the state of Missouri, is the real defendant in the case, and sold to the nominal defendants sundry saddle-trees, which they also sold, and which were exact reproductions of the shape which is being manufactured by the plaintiff under this patent. It is said that neither the shape made by the plaintiff nor by the actual defendant resembled the picture attached to the specification, or followed the description in the patent, and that therefore there was no infringement. The specification says that the pommel, on its rear side, falls nearly perpendicularly for some inches, when it is joined by the line forming the profile of the seat; and in the picture the point of junction is an angle, whereas in the manufactured articles it is a curve. The difference between the patented and the manufactured shapes is not important enough to justify a serious question in regard to the fact of infringement. There is a substantial sameness in the two designs, as a whole, which would deceive the eye of an ordinary purchaser of manufactured saddles.

The question of patentable novelty is the one upon which the most stress has been laid, and which has been exhaustively treated by the defendants. No saddle-tree in existence prior to 1878 has been produced which at all resembles the patented shape. The defendant's position upon the question of patentability is that the shapes of all saddles were

altered by manufacturers to suit the requirements of purchasers, and that old shapes, if modified by the rejection of existing features, and by the substitution therefor of other features which were known before the date of the patent, would be the patented shape. This position is most strongly exhibited in the supposed combination of the Jenifer-McClellan and the Granger saddles, each of which exisited prior to 1878. It is truly said that the military Jenifer or the Jenifer-McClellan saddle-tree had a high, peaked cantle, and a high, prominent pommel, whereas the Granger tree had a "cut back" pommel, and a low, broad cantle; and the argument is that the front half of the Granger and the rear half of the military Jenifer made the Whitman, without the exercise of invention. It is true, using language broadly, that the Whitman tree shows prominent features of each of these two trees, and united two halves of old trees, but the inference that therefore the product or result of Whitman's study and experiment was destitute of invention, does not follow. A mechanic may take the legs of one stove, and the cap of another, and the door of another, and make a new design which has no element of invention; but it does not follow that the result of the thought of a mechanic who has fused together two diverse shapes, which were made upon different principles, so that new lines and curves, and a harmonious and novel whole, are produced, which possesses a new grace, and which has a utility resultant from the new shape, exhibits no invention. This was effected by the patentee, and I entertain no doubt that the shape which he produced was entitled to a patent. Let there be an interlocutory decree for an injunction and an accounting.