**AMERICAN MINE DOOR CO. v. NEWBERRY.**

(Circuit Court of Appeals, Fourth Circuit. January 27, 1925.)

No. 2286.

Patents ⚙328—1,304,534, for improving cable splice, held invalid for anticipation.

Bowman patent, No. 1,304,534, for an improved cable splice for connecting cables, *held* invalid as anticipated in prior art.

Appeal from the District Court of the United States for the Southern District of West Virginia, at Huntington; George W. McClintic, Judge.

Patent infringement suit by the American Mine Door Company, a corporation, against John A. Newberry. From a decree dismissing his bill, the plaintiff appeals. Affirmed.

R. W. Bishop, of Washington, D. C. (A. B. Lacey and S. N. Acker, both of Washington, D. C., on the brief), for appellant.

Frederick S. Stitt, of Washington, D. C., for appellee.

Before WOODS, WADDILL, and ROSE, Circuit Judges.

ROSE, Circuit Judge. The parties here occupy the same position they did below; that is to say, the appellant, the American Mine Door Company, who is the owner of letters patent No. 1,304,534, issued May 27, 1919, to one Bowman, alleging infringement by the defendant, Newberry, the appellee here, filed against him a bill for an injunction and accounting. The defendant set up the usual defenses of nonvalidity and noninfringement. After hearing, the learned judge below dismissed the bill.

The patent was for an improved cable splice "for connecting cables or like elements." It is formed by bending around the cable to be spliced a single piece of diamond shaped or trapezoidal sheet metal; the opposite projecting ends of the diamond, called by the patentee spurs, having a beveled edge adapted to mate each with the other. Such a splice, by pressure readily applicable, may be clamped as tightly as desired around the cable or other article, the ends of which are to be held together, and within quite appreciable limits independently of the thickness of the cable upon which it is to be used. It will fit so snugly upon the cable that, when covered by insulating material, it will be no obstacle to the winding up of the cable upon an automatic reel, and there will be no appreciable projections to catch around corners or pillars in a mine.

It was primarily designed for use in connection with cables carrying the electric current to mine motors, and the testimony shows that for that purpose it is cheap, readily applied, and effective, and that there is quite a fair demand for it. It is not questioned that the prior art discloses a number of devices which very closely resemble the patent in suit, but it is said they were not intended for use with cables in carrying electric current in mines and were never so used. They were to be applied to crinoline wires, to well ropes or cables, or when designed, as some of them had been, for attaching wires or cables to portions of electric machines, the portions of them resembling the patented device formed an integral part of the whole, which

could not without mutilation be made to serve the purpose of plaintiff's splice.

It is said that all the uses shown were in arts which were not related to the operation of electric motors in mines, and that it sometimes requires as acute a perception of the relation between cause and effect, and as much of the peculiar intuitive genius which is characteristic of great inventors, to grasp the idea that a device used in one art may be made available in another as would be necessary to create the device de novo. Potts & Co. v. Creager, 155 U. S. 600, 15 S. Ct. 194, 39 L. Ed. 275.

In the instant case it is argued that is precisely what was done. We think that this contention rests upon a misconception of the art to which the patented device belongs, which is that of splicing or "connecting cables or like elements." It operates independently of the use to which the thing spliced has been or is to be applied. It is true that a splice for mine cables must be tight, fit snugly, and make a strong joint, but all of these are at least desirable qualities wherever splices are used. Any one of them may be essential in other places than mines, and in connection with other things than electrically operated mine motors, and, what is more to the point, must have been possessed by some of the devices in the prior art. The art or mystery of the undertaker and of the fresh fish vendor are not related, but a device for preserving human bodies may anticipate another intended to keep fish from spoiling, because the common purpose of each is to retard the decay of animal tissues. Brown v. Piper, 91 U. S. 37, 23 L. Ed. 200.

It follows that the decree below was right, and is affirmed.