GROSS v. NORRIS.

(District Court, D. Maryland. March 18, 1927.)

No. 1147.

1. Patents ⬡327(19)—Decision of Circuit Court of Appeals as to validity of patent binds District Court.

Decision of Circuit Court of Appeals as to validity of patent is binding on District Court within that circuit.

2. Patents ⬡119—Design patent and mechanical patent covering same device may coexist.

Since design patent pertains to appearance, while mechanical patent relates to mechanical structure of a device, a design and mechanical patent covering same article of manufacture may coexist.

3. Patents ⬡15, 119—Design patent covering mechanical function is void, though double patenting does not result from attempt to cover device with design and mechanical patents.

Though a design patent cannot be used to protect a mechanical function, or to cover an article whose configuration affects its utility alone, and whose appearance is of no consequence, double patenting does not result from attempt to cover device by both kinds of patents; design patent in such case being invalid.

4. Patents ⬡66(1)—Disclosure of design patent may be so full as to invalidate subsequent mechanical patent pertaining to same device, and vice versa.

A design first published may give such precise information that there can be no invention in a later mechanical patent pertaining to same article, and a diagrammatic drawing filed as part of the specifications of a mechanical patent may anticipate claims of later design.

5. Patents ⬡328—57,640, for design of automobile parking light, held invalid for lack of invention.

Design patent, No. 57,640, for design for parking light to be attached to fender of automobile, held invalid for want of invention, though not invalid as being applicable to mechanical structure only.

6. Patents ⬡28—Design patent, to be valid, must show originality and beauty; mere mechanical skill being insufficient.

Test of invention in a design patent is the same as that applying to mechanical patent, and must show originality and beauty; mere mechanical skill being insufficient.

7. **Patents ☞66(1), 82, 154—Disclosure of design in specification of mechanical patent did not necessarily constitute anticipation, disclaimer, or abandonment of design patent, where both applications were pending at same time.**

Disclosure of design in drawing attached to specification of mechanical patent, previously filed, did not necessarily act as an anticipation of design patent, nor as a disclaimer or abandonment thereof, where both applications were pending in Patent Office at same time.

8. **Patents ☞138(1)—Suit for Infringement of patent involving appeal held to satisfactorily explain delay in applying for reissue, taking case out of rule that two years' delay invalidates broadened reissue.**

Where original patent was infringed shortly after it was issued, and plaintiff promptly sued for infringement and appealed from dismissal of suit, and after patent was sustained by appellate court applied for reissue, *held*, that delay of two years from issuance of original patent in applying for reissue was so satisfactorily explained as to take case out of general rule that delay for more than two years invalidates a broadened reissue.

9. **Patents ☞136—Mistake justifying reissue need not be one of fact.**

A mistake which will justify a reissue need not necessarily be a mistake of fact, and inventor's failure to describe invention with requisite certainty, or to express claim fully to cover invention is ground for reissue, if seasonably applied for.

10. **Patents ☞328—Reissue No. 15,782, claims 4, 5, 6, for parking light to be attached to automobile fender, held valid.**

Reissue No. 15,782, claims 4, 5, 6, for parking light to be attached to automobile fender, *held* valid.

In Equity. Patent infringement suit by Angus R. Gross against Harry O. Norris, trading as H. O. Norris & Sons. Decree for plaintiff.

Alexander & Dowell, of Washington, D. C., and Coleman, Fell, Morgan & Brune, of Baltimore, Md., for plaintiff.

Charles Lee Merriken, of Baltimore, Md., for defendant.

SOPER, District Judge. The validity of the third claim of the patent in suit was adjudicated by the Circuit Court of Appeals of this circuit in Gross v. Frank, 293 F. 702. The original patent, No. 1,380,058, was granted May 31, 1921, on an application filed August 4, 1920. It covers a parking light to be attached to the fender of an automobile. The third claim thereof is as follows:

"3. In a parking light, a tubular supporting member having its upper end formed with a bayonet slot for engagement with the pin of a lamp shank and having an integral exterior supporting flange adapted to rest upon the top of the fender; means for clamping the flange to a fender; a small T-shaped casing comprising a cylindrical body open at its opposite ends and a depending tubular T-portion adapted to telescope over the upper end of the tubular supporting member above the flange; multifaceted lenses secured in and projecting beyond each end of the casing; a socket screw for fastening the T portion of the casing to the upper end of the socket member the outer end of said screw being substantially flush with the exterior of the part in which it is threaded, an insulating block fixedly secured in the lower end of the tubular supporting member; and means in said block for making electrical contact with the contacts in the shank of a lamp when the latter is inserted in the upper end of the socket member, the parts being so proportioned that the lamp is approximately in axial alignment with both lenses, substantially as described."

The Circuit Court of Appeals, in its opinion filed November 6, 1923, made the following statement:

"It is not shown in the record that any prior light had been produced with a small metal T-shaped body and projecting faceted lenses in each end thereof, as in the case of the plaintiff's light. This was the essentially novel feature of the plaintiff's invention, and what made his light a success was the small T-shaped casing with the projecting multifaceted lenses in each end thereof. No one had previously conceived this idea, and used a lens with multifaceted lenses on such a casing for the purpose desired, with the result that the projections and the facets on each side threw the rays of the light sideways as well as forward, greatly magnifying the size of the light. This was a real contribution to the prior art, was novel in character, calling for inventive genius, and had not theretofore been anticipated."

Thereafter on December 24, 1923, the plaintiff, in view of this statement in the opinion, surrendered the original letters patent, and applied for a reissue thereof with three additional claims, 4, 5, and 6, and was granted reissued letters patent, No. 15,782, on March 4, 1924. Claims 4, 5, and 6 are as follows:

"4. For a parking light, a small T-shaped casing having openings in its opposite ends, and projecting multifaceted lenses secured in said openings and projecting beyond each end of the casing and means for attaching same to an automobile fender, substantially as described.

"5. In a parking light, a member adapted

to be attached to a fender, a small T-shaped casing having openings in its opposite ends and multifaceted lenses secured in and projecting beyond each end of the casing, and means for securing the casing on the said member, substantially as described.

"6. In a parking light, a tubular member, means for securing the member to a fender, a small T-shaped casing having openings at its opposite ends and multifaceted lenses secured in and projecting beyond each end of the casing, means for fastening the T of the casing to the upper end of the said member, and insulated means connected with said member for making electrical contact with the terminals of a lamp in the casing, substantially as described."

The present suit involves the four claims of the reissued patent above set out and also design patent, No. 57,640, which was granted April 26, 1921, on an application filed October 19, 1920. It thus appears that the original letters patent were applied for prior to the application for the design patent, but were issued after the design patent. The design patent covers an ornamental design for parking lights for automobiles, concerning which the specification states that the striking features of the design are the T-shaped casing and projecting jeweled ends. The drawing in the design patent is substantially similar to the drawing filed as a part of the specification of the original patent, illustrating the form of the mechanical structure. It is claimed that the defendant infringes, not only claims 3 to 6 of the reissue patent, but also the design patent. The charge of infringement as to the reissued patent is not denied. The defense as to both is based mainly upon the alleged invalidity of the patents in suit.

The character of the invention covered by the mechanical patent is described correctly (except as may be hereinafter modified) in the following excerpts from the specification:

"This invention is a novel fender light or 'parking light' for use on automobiles and its object is to provide a small, effective electric light, which can be readily attached to the fender of an automobile, or to other desired support, and does not require any skilled mechanician for so doing, and which light will be very simple in construction and will permit ready access to the lamp for removal thereof in case of breakage, and which can be readily taken down or set up.

"An essential novel feature of the lamp is the small metal T-shaped body and projecting multifaceted lenses in each end thereof, such multifaceted lenses causing diffusion of the rays of the light sideways as well as forward, and greatly magnifying the size of the light.

"For a practical efficient light the casing is only about 1½ inches long and 1 inch in diameter, so that it is small and unobtrusive, and at the same time neat and attractive in appearance. The lenses afford most effective fore and aft light when the lamp is burning. If the lamp should burn out, or if it is desired to inspect it, it is only necessary to loosen a screw, lift the casing off the socket member, and remove, inspect, and replace the lamp in the socket, slip the casing back over the lamp, see that the casing is properly turned so that the lenses are properly located fore and aft, and then tighten the screw."

[1, 2] This court is, of course, bound by the decision in the Frank Case, and its province is limited to a consideration of such new matters in the case at bar as were not before the court in the prior action. Two differences have already been noticed. The design patent was not mentioned, and the reissued patent did not exist at the time of the earlier case. The defendant moves for the election by the plaintiff between the design and the reissued patents, relying upon the rule against double patenting. It would seem, however, that, if it is a case of double patenting, the later patent would be disposed of without the necessity of election. Under the rule laid down in Miller v. Eagle Manufacturing Co., 151 U. S. 186, 14 S. Ct. 310, 38 L. Ed. 121, the mechanical patent, both in its original and reissued form, would fall, since it was issued after the design patent, although first applied for.

But it is difficult to understand how a situation of double patenting can arise in the case of a design and of a mechanical patent applicable to the same device, notwithstanding certain statements in the books to the contrary. Luminous Unit Co. v. Freeman-Sweet Co. (D. C.) 249 F. 876; Williams Calk Co. v. Neverslip Mfg. Co. (C. C.) 136 F. 210, affirmed on appeal, upon another ground (C. C. A.) 145 F. 928. There may be double patenting when two patents for the same mechanical structure are sought, as in Miller v. Eagle Mfg. Co., supra, and when two patents for the same design are applied for, as in Faris v. Patsy Frok & Romper Co. (C. C. A.) 273 F. 900. But a design patent and a mechanical patent relate to different subject matter. The first pertains to the appearance while the second relates to the mechanical structure of a device, and it is well settled that a design and a mechanical patent covering the same article of manufacture, may coexist. Ashley v. Weeks-Numan Co. (C. C. A.) 220 F. 899; Dietz v. Burr & Starkweather Co. (C. C. A.)

243 F. 592; Bayley & Sons v. Standart Art Glass Co. (C. C. A.) 249 F. 478; Baker v. Hughes-Evans Co. (C. C. A.) 270 F. 97.

[3] It is true that a design patent cannot be used to protect a mechanical function, or to cover an article whose configuration affects its utility alone, and whose appearance is a matter of no consequence. Theodore W. Foster & Bro. Co. v. Tilden-Thurber Co. (C. C. A.) 200 F. 54. Yet, if an attempt is made to cover such a structure by both kinds of patents, double patenting does not result, for the reason that the design patent is invalid. Ferd Messmer Mfg. Co. v. Albert Pick & Co. (C. C. A.) 251 F. 894.

[4] Again, an attempt to secure patents of both sorts may prove abortive, when the information disclosed in the first patent is so full as to deprive the second of the quality of invention. A design first published may give such precise information of the character of the article to which it is attached that there can be no invention in a later mechanical patent pertaining to it, President Suspender Co. v. Macwilliam (D. C.) 233 F. 433; and a diagrammatic drawing, filed as part of the specification of a mechanical patent, may doubtless anticipate the claims of a later design. These, however, are not instances of double patenting.

[5] The defendant further contends that the design patent in suit is invalid, because it necessarily involves the mechanical structure of a parking light, and involves nothing else. As appears from claim 3 of the reissued mechanical patent, the parking light is described as "a small T-shaped casing comprising a cylindrical body open at its opposite ends and a dependent tubular T-portion, * * * multifaceted lenses secured in and projecting beyond each end of the casing." The drawing accompanying the specification portrays a lamp very similar to the drawing of the design patent. The specification of the design patent declares that "the striking features of the design are a T-shaped casing and projecting jeweled ends." When it is borne in mind that the shape and size of the lamp are important elements of the mechanical invention, it is apparent that the design patent approaches very nearly to the subject-matter of the mechanical structure.

Nevertheless it is quite easy to imagine a design of a fender light involving a T-shaped casing, with jeweled ends of such beauty and originality as to be the fit subject of a separate patent. It so happens that the defendant's Victor parking light very closely resembles in appearance the plaintiff's parking light; yet the resemblance might be much less

pronounced without avoiding infringement of the mechanical patent. Such was the fact in the Frank Case, which did not involve the design patent. The Frank lamp is not so easily confused with the plaintiff's lamp by an ordinary observer or purchaser, and therefore, perhaps, it did not infringe the design patent under the rule laid down in Gorham Co. v. White, 14 Wall. 511, 20 L. Ed. 731. Yet it did infringe the plaintiff's mechanical patent. The defendant's contention that the design patent is invalid, as applicable to structure only, cannot be sustained.

[6] Nevertheless the design patent fails on the score of invention. The test of invention in such a patent is the same as in mechanical patents; that is, is the new invention within the range of the ordinary routine observer? Strause Gas Iron Co. v. Wm. M. Crane Co. (C. C. A.) 235 F. 126. While it has been said that a design patent must relate to subject-matter comparatively trivial, and the courts have looked with greater leniency upon them than patents for other inventions (Dominick & Haff v. R. Wallace & Sons Mfg. Co. [C. C. A.] 209 F. 223), nevertheless there must be "originality and beauty. Mere mechanical skill is not sufficient." Whitman Saddle Co. v. Smith (C. C.) 38 F. 414; Dietz v. Burr & Starkweather Co., supra; Faris v. Patsy Frok & Romper Co., supra. Bearing this rule in mind, it is not possible to find invention in the design patent in suit, particularly when its limited scope is remembered.

[7] It is true that the disclosure of the design in the drawing attached to the specification of the mechanical patent previously filed did not necessarily act as an anticipation of the design patent, nor as a disclaimer or an abandonment thereof, since both applications of the inventor were pending in the Patent Office at the same time. Thomson-Houston Electric Co. v. Elmira & H. Ry. Co. (C. C. A.) 71 F. 396; Bayley & Sons v. Standart Art Glass Co. (C. C. A.) 249 F. 478. But at any rate the inventor started with the small T-shaped casing with jeweled ends involved in the valid mechanical patent. There was left to him to create only such an arrangement of this subject-matter as would comprise both beauty and invention. He was entitled neither to the T-shaped nor to the jeweled ends as original parts of a beautiful design. What he produced resembles very much the well-known plumber's T, from which it differs only in the addition of the lenses and in a slight tapering towards the end of the cylindrical crosspiece of the T. Certainly such a result was easily within the ability of the routine draftsman. The patentee's contribution did

not rise to the dignity of invention, and the design patent must be held invalid.

[8] The defendant also claims that the reissued mechanical patent is invalid, because (1) the application for it was not filed until more than two years after the issuance of the original patent; and (2) there was no mistake in the original application, but a deliberate abandonment of the new matter subsequently claimed. The original patent with three claims was issued May 31, 1921. Infringement soon followed and in October, 1921, the plaintiff filed a bill against Frank for infringement of claim 3. The suit was dismissed by the District Court, but an appeal was promptly taken, and the patent was sustained by a decision of the Circuit Court of Appeals rendered on November 6, 1923. Thereupon the plaintiff applied on December 24, 1923, for a reissue of the patent, and put in claims 4, 5, and 6, in order to incorporate that which was called by the appellate court the essentially novel feature of the lamp.

The delay of more than two years is thus satisfactorily explained. The plaintiff could not have applied for the reissue pending the appeal, because in the meantime the patent had been declared invalid by the trial court, and because a surrendered patent cannot be enforced while an application for review is pending. Burrell v. Hackley (C. C.) 35 F. 833; Coffield v. Fletcher Mfg. Co. (C. C. A.) 167 F. 321; Maitland v. B. Goetz Mfg. Co. (C. C. A.) 86 F. 124. The special circumstances of the case take it out of the general rule that a delay for more than two years invalidates a broadened reissue. Topliff v. Topliff, 145 U. S. 171, 12 S. Ct. 825, 36 L. Ed. 658.

[9] The defendant also insists that the plaintiff deliberately abandoned the substance of the new claims, since the idea involved was expressly set out in the statement in the specification of the design patent that the striking feature of the design was a T-shaped casing and projecting jeweled ends. But a mistake which will justify a reissue need not necessarily be a mistake of fact. The Supreme Court in Topliff v. Topliff, supra, comments upon the difficulty in the preparation of the specification and claims of a patent, and indicates that the failure of an inventor to describe his invention with requisite certainty, or to express a claim so as fully to cover an invention, will furnish ground for the reissue if seasonably applied for. Since the learned courts, which passed upon the patent in suit, differed as to its sufficiency and weight, it is not surprising that the petitioner himself did not fully comprehend the nature of his invention.

[10] It remains to determine whether the Circuit Court of Appeals, if the other new matters in the case at bar had been present in the prior record, would have declared the patent invalid. They consist of the new claims, 4, 5, and 6, in the reissued patent, and certain new evidence consisting, for the most part, of patents in the prior art. The opinion in Gross v. Frank, gives no recital of the prior art in detail. The record shows, however, that a considerable number of prior patents were brought to the attention of the court. For instance, it was shown that a T-shaped parking light for the fender of an automobile was old in the patent to Lacerda of 1917. The light in this lamp was contained in a cylindrical metal body, whose open ends, front and rear, were provided with glasses, whereby the rays of light would be directed forwardly and rearwardly.

Attached to the cylindrical body, and at right angles therewith, was a hollow supporting member, which formed the vertical piece of the T. But the lamp did not have jeweled lenses and was considerably larger than the Gross lamp. Such lenses, however, were quite common for decorative purposes in connection with incandescent electric lights, and were specifically used in automobile fender lights in the patent to Shaw of 1915. The Shaw lamp was attached beneath the forward end of the front fender of an automobile to illuminate the front wheels. Projecting jeweled lenses were inserted, one in the front and one in the side of the fender. The bicycle lantern, covered by the patent to Hamm of 1897, was fitted with colored jewels mounted on opposite sides of the metal case or frame of the lamp. These citations from the record in Gross v. Frank show that, if the jewels of the Shaw or Hamm lamp had been employed in the Lacerda lamp, and the latter had been reduced in size, a T-shaped casing with projecting jeweled ends would have been produced.

The prior art, as described in the Frank Case, also contained a number of illustrations of means for connecting lamps with automobile fenders or other devices; e. g., the British patent to Aron of 1912 and the United States patents to Stender and to Parsche of the same year. It is not necessary to discuss the details of these patents, for the plaintiff does not claim that there was anything novel in Gross' method of attaching the casing of his lamp to the body of the fender.

With these instances of the prior art before it, the Circuit Court of Appeals decided

that the Gross patent could be sustained on two grounds. It held, in the first place, as set out above, that there was such novelty and utility in the plaintiff's device as to entitle him to a patent, and in the second place further declared:

"Treating, however, the case as one of patentable combination, based upon the alleged improvement of old devices theretofore existing, so as to produce new, useful, and valuable results, we think there can be little doubt of the validity of the patent, and that it embodies the necessary requisites to sustain such patent, taking into account the success attained and the benefit accomplished from such combination. This would entitle it to validity alone as an advance in the art."

The court spoke of the fact that the effectiveness of the light had been greatly improved as well in its size as in its simplicity; in the lessening of the cost and in neatness and appearance. It said:

"The lenses were put in, in the location as claimed, to accomplish the very purpose of increasing the size of the light over those of the larger lamp which it seems to have displaced. Thus the otherwise merely ornamental jewel lenses were adapted to new purposes, namely, for better disseminating the light from a smaller lamp. The plaintiff's patent was for improvement on patents theretofore existing, not for something entirely new in itself, and hence it involved necessarily dealing with what had theretofore gone before. But this in no manner detracts from the validity of the plaintiff's claim if it develops that what he has procured by way of enlargement and improvement and development of the art in the previous stages is something shown to be an advance in the science, and novel, useful, and valuable, and confers a real benefit."

The court, commenting on the immediate commercial success of the lamp, also said:

"Primarily the popularity of this lamp results from its size, attractive appearance, durability, and the amount of light radiated. Because of its smaller size, it can be placed, without danger of injury, on the fender of an automobile, where it is most effective as indicating the position of the vehicle by unobstructedly projecting light rays fore and aft. Moreover, it is so made as to allow the removal and introduction of electric bulbs when necessary by the manipulation of a small number of parts, without deranging the other parts of the lamp, and simple means are provided for securing it to the fender."

For these reasons, the court, taking into consideration the presumption of patentabil-ity arising from the issuance of the patent, sustained the validity of the patent.

What is there in the present case to justify a different conclusion on the part of the trial court? The defendant cites a number of patents, not in the prior record, as tending to show that the use of jewels in incandescent lamps is old, particularly the patent to Abbott of 1887, the patent to Hawthorne of 1917, and the patent to Mygatt of 1914. But these disclosures do not approximate the patent in suit more nearly than the prior art cited in the case against Frank. Indeed, it is a fair summary as to this branch of the case to say that the defendant relies almost exclusively upon two French patents to Trouve, Nos. 154,568 and 160,901, and upon the British patent to Clark, No. 5,714, which is a counterpart of the first patent to Trouve. These patents are now brought to the attention of the court for the first time, although the Clark patent was cited by the examiner upon the application of Gross for the reissue. The first patent to Trouve only need be considered, since it contains the material upon which the defendant chiefly relies.

This patent, as originally filed, related to a lighting apparatus called a frontal electric photophore. It consisted of an apparatus to attach to the forehead of a surgeon. It contained a light which was capable of being moved in any direction, so as to send the rays upon the parts to be examined. Subsequently additions were made to the patent to obtain luminous effects from a decorative viewpoint for the theater and for the accessories of dress in general, and specifically jewels, cane heads, etc. Drawings accompanied the additions to the patent, one of which shows an illuminated cane head, composed of a globular metal case, which opens for the passage of the lamp, either laterally or in the upper part. The case is mounted on a socket attached to the cane. The socket receives that of the lamp, and is pierced at the bottom for the passage of the wires. The case is studded with jeweled lenses, of which the two largest are disposed at opposite sides thereof.

The defendant claims that this structure is literally an anticipation of the Gross lamp, or, in any event, involves such a disclosure as to invalidate Gross' claim to invention, on the ground that the cane head may be fitly described as a small metal T-shaped body with projecting faceted lenses in each end thereof. The spherical light chamber with facets on opposite sides form, it is said, the cross-piece of the T, while the vertical stem of the T is formed by the socket inserted in the end of the cane. The defendant admits that the

crosspiece is much shorter than the cylindrical crosspiece of the Gross lamp, but urges that such was the case with the square-shaped light chamber of the Frank lamp, involved in the prior suit.

However this may be, it is not clear that a ball, poised on the end of a stick of less diameter, may fairly be called a T-shaped device, while the cube-shaped profile of the light chamber in the Frank lamp, in connection with the supporting stem, does produce the effect of a T. The question of literal anticipation is, however, immaterial, for the Trouve device was a small metal body with projecting faceted lenses in its opposite ends, and was close enough in shape to a T to deprive that configuration, considered alone, of patentability.

What, then, are the differences between Trouve's cane head and Gross' fender lamp? They may be summarized as follows: The spherical cane head is an ornament studded with jewels, and although the two largest happen to be at opposite ends, the arrangement is not designed for signaling. The cane head fits rather closely around the lamp in two hemispheres separable from each other and from the socket into which they fit. The wires must be led through the cane and attached to the lamp before the lamp can be placed in the casing. There is no means for the attachment of such a lamp to an automobile fender. On the other hand, there is in the Gross lamp an integral one-piece casing, which can be put in place and removed without disturbing the lamp. This is possible, because the casing slips over a member which is attached to the fender, and is also designed to receive the lamp socket. It is obvious that the cane head of Trouve offers no practical suggestion as to how it shall be adapted to the function of a fender light, or attached in a practical manner to an automobile fender.

The defendant says that these changes are unsubstantial, and that all the features of the Gross lamp were familiar in the prior art, and were grouped together in the patent in suit, without giving them a new function to accomplish a new result, and hence there is no patentable invention in the Gross disclosure, but only a double use of Trouve's device. Railroad Co. v. Elyria Iron Co., 244 U. S. 285, 37 S. Ct. 502, 61 L. Ed. 1136; American Mine Door Co. v. Newberry (C. C. A.) 3 F.(2d) 435. But it is difficult to see how the Trouve lamp invalidates the patentable combination declared by the appellate court to exist in the Gross structure, if the prior art, exclusive of Trouve, did not have this effect.

The prior art before the court included everything combined in Trouve; a T-shaped lamp, the jewels, and the disposition of them on opposite sides of the light source were familiar. Trouve served only to combine a T-shaped casing with jeweled lenses. This was, it is true, a part of the Gross combination, but only a part. Gross used jewels not merely for the purpose of illumination, but in order to make possible a small lamp which would give a spread of light disproportionate to the actual size of the lamp body. In the words of the Circuit Court of Appeals, "the otherwise merely ornamental jewel lenses were adapted to new purposes, namely, for better disseminating the light from a smaller lamp." In addition, Gross showed how to place such a lamp, without danger of injury, on the fender, and how "to allow the removal and introduction of electric bulbs, when necessary, by the manipulation of a smaller number of parts, without deranging the other parts of the lamp, and simple means are provided for securing it to the fender."

The court also found that the simplicity of the device, the lessening of the cost, and the employment of a smaller number of parts contributed to the patentable combination. None of these additional means were in any way suggested by Trouve. Had his device been before the patentee, it would not have told him how to accomplish the combination upon whose beneficial results the court based its second ground for upholding the patent. The defendant does not make a sufficient showing to justify the District Court in holding invalid claim 3 of the patent, which has already been sustained by the Circuit Court of Appeals.

The remaining claims 4, 5, and 6 of the reissued patent were incorporated, in order to emphasize the conclusion of the Circuit Court of Appeals in the Frank Case that a novel feature of the plaintiff's invention was the small T-shaped casing with projecting multifaceted lenses. If the claims had been so phrased as to adopt this broad idea, they might well be held invalid having regard for the Trouve lamp, in accordance with the discussion above outlined. Indeed, claim 4 as it originally appears in the application for reissue seems to have been so intended; but it was rejected by the examiner, because it was thought to be substantially anticipated by the British counterpart of the Trouve patent. Thereupon the applicant amended the claim so as to include "means for attaching the same to an automobile fender." Similar qualifications or limitations are also found in claims 5 and 6. It is therefore not proper to give them so broad an import as to include all T-

shaped structures with projecting lenses. The words of limitation contained in the claims must be given due effect, and as thus narrowed, the claims may be sustained as covering a patentable combination for the same reasons as claim 3. Singer Mfg. Co. v. Cramer, 192 U. S. 265, 24 S. Ct. 291, 48 L. Ed. 437.

The plaintiff is entitled to a decree for an injunction and an accounting.