**CARMAN INDUSTRIES, INC.,**
Appellant,

v.

**Eugene A. WAHL and Vibra Screw, Inc., Appellees.**

**Appeal No. 83–683.**

United States Court of Appeals, Federal Circuit.

Dec. 27, 1983.

Thomas F. McWilliams, Chicago, Ill., argued, for appellant.

John W. Logan, Jr. and Thomas Ferrill, Jr., Fort Washington, Pa., argued, for appellees.

Before BENNETT, SMITH and NIES, Circuit Judges.

EDWARD S. SMITH, Circuit Judge.

This appeal is from the December 22, 1982, judgment of the United States District Court for the District of New Jersey holding U.S. patent No. 3,261,508 ('508) valid and infringed. Carman Industries, Inc. (Carman), appeals from that judgment. Carman commenced this action against Eugene A. Wahl and Vibra Screw, Inc. (Vibra), seeking a declaratory judgment that the '508 patent is invalid and not infringed. Vibra filed a counterclaim for patent infringement. The case was tried before the district court without a jury. After reviewing the record and briefs and, having heard oral argument, we find no clear error in the district court's findings of fact. The judg-

**934**

ment is supported by the findings of fact. Thus, we affirm.

## I.

On January 24, 1964, Eugene A. Wahl filed an application for patent for a "Vibratory Bin Activator" apparatus. U.S. patent No. 3,261,508 issued on that application on July 19, 1966.

## A.

The invention relates to an apparatus that is attached to the base of a storage bin or hopper to promote the flow from the bin or hopper of solids that have poor flow characteristics.[1] Prior art approaches to the problem of promoting the flow of difficult-to-handle solids involve the use of sweep arms, screw conveyors, or like elements. Claims 2, 3, 4, 6, and 7 are involved in this appeal and are set forth below:

2. Apparatus for promoting the flow of material from a storage hopper having a discharge opening formed in the bottom thereof, said apparatus comprising,

(a) a material-receiving member having a bottom wall defined by a plurality of concave surfaces terminating in a central outlet opening,

(b) a baffle member rigidly secured to the material-receiving member and having a peripheral surface spaced from the inner wall of the material-receiving member,

(c) means vibrationally suspending the material-receiving member from the hopper and in spaced position to the hopper wall, and

(d) means for vibrating the material-receiving member.

3. The invention as recited in claim 2, wherein the baffle member is of convex form and wherein the said means for vibrating the material-receiving member is a gyrator mechanically-coupled to the material-receiving member, said gyrator comprising an eccentrically-mounted weight rotatable by an electric motor.

4. The invention as recited in claim 3, wherein the eccentrically-mounted weight is rotatable in a plane substantially normal to the axis of the said material-receiving member.

\*   \*   \*   \*   \*   \*

6. Apparatus for promoting the flow of material from a storage hopper having a conical lower portion terminating in a hopper discharge opening, said apparatus comprising,

(a) a first concave member having a central opening formed therein and a cylindrical base portion,

(b) a second concave member secured to the first concave member and having a central opening formed therein,

(c) a baffle member secured to the first concave member and having a peripheral surface spaced from the inner wall of the said concave member,

(d) means vibrationally suspending the first concave member from the hopper, with the said cylindrical base portion spaced from the hopper wall, and

(e) means for vibrating the said three members as a unit.

7. The invention as recited in claim 6, wherein the said baffle member is an inverted dish-shaped member having a diameter substantially equal to the central opening in said first concave member.

Top view

1. The invention is intended primarily for use in promoting the flow of difficult to handle solids, such as wet sand, clay, or wood chips, for

which no method of promoting flow had proven satisfactory.

Side view

Wahl '508 patent

The key point of contention with respect to the '508 patent is the compound concave surface limitations of claims 2 and 6, the only independent claims. The invention operates through a combination of three forces: the effects of the baffle member; the horizontal force supplied to the material particles through vibration of the material-receiving member; and gravity. The baffle forces the flow to proceed in an annular path down the concave surfaces of the material-receiving member. Through its vibration, the material-receiving member imparts horizontal motion to the flow, forcing the material into the void created below the baffle. In this manner the particles of material move down and in toward the center of the apparatus. The break in slope between the concave surfaces of the material-receiving member serves to "gather" the flow and accelerate the material through the central opening without competition between particles in the flow for position. Once the material passes this "break-slope," it proceeds rapidly to the lower concave surface. The break in slope between the concave surfaces serves to prevent the material from merely "crawling" down the side of the material-receiving member. Instead, the particles are presented with a sharp change in the forces being exerted on them, as indicated by the arrows in the following drawing:

Conical lower portion of hopper

Baffle

First concave surface

Material-receiving member

Second concave surface

Outlet

Sectional view
Wahl '508 patent

### B.

Judge Meanor, in a careful and comprehensive opinion, found that Carman failed to overcome the presumption of validity and he therefore held the patent valid. He found that the patent is not literally infringed but that the accused infringing device is the legal equivalent of the invention. He also found that, under the proposed construction of the claims under the doctrine of equivalents, the claims would be valid and, accordingly, held that the '508 patent is infringed by Carman's bin discharger.[2] Relying on the Third Circuit's analysis of double patenting in *Wahl v. Rexnord, Inc.*[3] the district court additionally found that the '508 patent was not invalid for double patenting. Carman appeals.

### II.

Two principal issues are presented in this appeal:

2. The district court appears to have reassessed the validity of the '508 patent in its analysis under the doctrine of equivalents. In doing so it combined the analysis of validity with that of infringement. Such an approach is potentially dangerous as it may lead to an erroneous determination of invalidity in circumstances where a conclusion of non-infringement is appropriate. The court found the claims valid under this analysis and an appropriate judgment was entered in this case. To the extent that the district court's analysis may be in error in this regard, we hold that that error is harmless. In reviewing the judgment, we apply the facts as found by the court, whether those facts were found in the "validity" or the "infringement" sections of the court's opinion.

3. *Wahl v. Rexnord, Inc.*, 624 F.2d 1169, 206 USPQ 865 (3d Cir.1980) (finding issues of material fact, reversing Judge Meanor's grant of summary judgment of invalidity of the '508 patent, and remanding the case for further proceedings).

(1) whether the '508 patent is invalid under 35 U.S.C. § 102 or § 103 or is invalid for double patenting in view of U.S.Des. patent No. 202,068 ('068); and

(2) whether the '508 patent is infringed under the doctrine of equivalents.

In determining these issues we must accept the findings of fact of the district court unless we find them to be clearly erroneous.[4]

Carman argues that the "concave surfaces" limitation of claim 2 and the "concave member" limitations of claim 6 compel the conclusion that the '508 patent is not infringed by Carman's conical material-receiving member. If those limitations are interpreted to include a conical member, Carman contends that the claims would be obvious or anticipated and, therefore, the claims must be held invalid.[5] With respect to double patenting, Carman urges the correctness of the trial court's earlier finding of invalidity in *Wahl v. Rexnord, Inc.*[6]

Vibra argues that it was error to conclude that the '508 patent was not literally infringed. Vibra contends that, in any event, the finding of infringement under the doctrine of equivalents should be affirmed. The '508 patent is valid in Vibra's view.

### III.

With respect to the issue of validity, three grounds of invalidity are argued: (1) that the invention is anticipated under section 102; (2) that the invention would have been obvious under section 103; and (3) that the '508 patent is invalid for double patenting in view of the earlier issued design patent to Wahl allegedly covering the same subject matter.

### A.

With respect to anticipation, Dumbaugh, U.S. patent No. 3,178,068 (Dumbaugh), is the closest prior art to the '508 patent.[7] Dumbaugh was before the examiner during prosecution of the '508 patent. That reference discloses a conical material-receiving member having a continuous slope. Reference is made in Dumbaugh to Lee, U.S. patent No. 3,071,297 for the teaching of material-receiving member walls made up of a combination of curves having a varying, yet continuous, slope. Thus, the slope disclosed in Dumbaugh, while either uniform or variable, is nonetheless continuous. Dumbaugh also employs a baffle plate in the lower portion of the material-receiving member to regulate the flow rate and to maintain flow. Additionally, the reference includes an agitation apparatus for inducing spiral flow to the material.

The district court found several differences between Dumbaugh and the '508 patent claims. While Dumbaugh employs a baffle plate as does the '508 patent, it does not disclose a break in slope between two or more compound curved sections. Judge Meanor found that element to be a critical feature of the claimed invention. Lacking

4. Fed.R.Civ.P. 52(a).

5. We note a critical error of analysis in Carman's argument. Although related, validity and infringement are separate issues. The validity of a patent is determined under the applicable criteria of patentability. One of the limitations on the use of the doctrine of equivalents is that the claims cannot be accorded a construction that would encompass prior art. *Thomas & Betts Corp. v. Litton Syss., Inc.*, 720 F.2d 1572 (Fed.Cir. Nov. 14, 1983), *rev'g Thomas & Betts Corp. v. Winchester Elecs. Div. of Litton Syss., Inc.*, 519 F.Supp. 1191, 213 USPQ 943 (D.Del.1981). Claims should be so construed, if possible, as to sustain their validity.

*Turrill v. Michigan S. & N.I.R.R. Co.*, 1 Wall. 491, 510, 68 U.S. 491, 510, 17 L.Ed. 668 (1864); *Klein v. Russell*, 19 Wall. 433, 466, 86 U.S. 433, 466, 22 L.Ed. 116 (1874). If such a construction *would* result in invalidity of the claims, the appropriate legal conclusion is one of non-infringement, not invalidity.

6. *Wahl v. Rexnord, Inc.*, 481 F.Supp. 573, 203 USPQ 838 (D.N.J.1979), *rev'd*, 624 F.2d 1169, 206 USPQ 865 (3d Cir.1980).

7. Since we reject Carman's anticipation argument based on Dumbaugh, which is the most pertinent prior art, we need not address Carman's remaining anticipation arguments.

an element of the claims, the reference cannot anticipate them under section 102.

We conclude that the trial court's findings with respect to anticipation are not clearly erroneous. Dumbaugh does not disclose all of the elements of the invention and, therefore, the invention is not anticipated under 35 U.S.C. § 102.

B.

■ Several prior art references are cited by Carman as establishing that the invention would have been obvious within the meaning of 35 U.S.C. § 103. Dumbaugh and Lee, *supra,* are the most pertinent prior art references. Three additional prior art references were discussed by the court and are again propounded by Carman on appeal: Rouse, U.S. patent No. 3,012,697; British patent No. 508,528; and Wahl, U.S. patent No. 3,173,583.[8] None of these three references was before the examiner. Nonetheless, the district court found that Carman had not overcome the presumption of validity.

In a careful analysis, the court below assessed the scope and content of the prior art, the differences between the prior art and the invention, and the level of ordinary skill in the art as required under *Graham v. John Deere Co.*[9] The district court determined that while each of the references discloses some feature of the invention, there remain substantial differences between the prior art and the claimed invention. It found that none of the references teaches the break in slope between two or more curved surfaces. It determined that the differences were substantial. Additionally, Carman's evidence on the level of ordinary skill in the art was found to be inadequate.

Our review of the record reveals that the district court's findings are well documented. We find no clear error. None of the references teaches the compound slope feature of the invention. The findings of the trial judge clearly indicate that he did not feel that the conical-concave distinction was critical to the issue of obviousness and he therefore fully considered each of the references. He carefully evaluated all of the evidence relevant to the issue of obviousness and correctly ascertained the differences between the invention and the prior art. We agree fully with his conclusion that "the [prior art] does not inform persons skilled in the art that a compound slope arrangement as recited in the '508 claims could create horizontal flow characteristics * * * and thereby enhance the dischargeability of materials having poor flow characteristics." The invention would not have been obvious to one of ordinary skill in the art under section 103.

C.

The court below, applying the law of double patenting articulated by the Third Circuit in *Wahl v. Rexnord,* found no double patenting. Carman alleges that the precedent of this circuit on double patenting is not entirely consistent with Third Circuit precedent on this issue. The precedents of this court must control,[10] but, contrary to Carman's contention, the test utilized by the Third Circuit, although not precisely in accord with our precedents, is not irreconcilable.

As a matter of legal theory, double patenting between a design and a utility patent presents significant problems. Judicial and scholarly criticism has been leveled at the concept of applying double patenting

---

8. The '583 patent was declared invalid under 35 U.S.C. § 103 by the Seventh Circuit in *Wahl v. Carrier Mfg. Co.,* 452 F.2d 96, 171 USPQ 195 (7th Cir.1971), *cert. denied,* 405 U.S. 990, 92 S.Ct. 1255, 31 L.Ed.2d 457, 173 USPQ 65 (1972).

9. *Graham v. John Deere Co.,* 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545, 148 USPQ 459 (1966).

10. Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, 1982 U.S.CODE CONG. & AD.NEWS (96 Stat.) 25; *South Corp. v. United*

between a design and a utility patent.[11] Design and utility patents are based on different statutory provisions [12] and involve different subject matter.[13] The scope of protection afforded by each type of patent is different. It has been asserted that these differences entirely obviate double patenting in the design-utility setting.[14] However, there exists CCPA precedent to the effect that a double patenting rejection of a pending design or utility patent application can be sustained on the basis of a previously issued utility or design patent, respectively.[15]

The Third Circuit in *Wahl* reversed a summary judgment of invalidity which was based on double patenting, because of the existence of material issues of fact regarding the "identity" of the claimed design and

utility inventions. In doing so, the court held that double patenting can exist between a design patent and a utility patent despite the differences in subject matter with which each type of patent is concerned. The test applied by the Third Circuit to determine whether double patenting exists is whether the two patents "cross-read," *i.e.*, claim the same thing: [16]

> To say that patents cross-read means that a device embodying the patentable design of the design patent *must* infringe the utility patent; *and* that a device embodying the patentable claims of the utility patent *must* infringe the design patent. * * * [Emphasis in original.]

█ In adopting the cross-reading standard, the Third Circuit in *Wahl* followed the decision in *Ropat Corp. v. McGraw-Edison*

---

States, 690 F.2d 1368, 1370, 215 USPQ 657, 658 (Fed.Cir.1982).

11. *Gross v. Norris,* 18 F.2d 418 (D.Md.1927), *modified,* 26 F.2d 898 (4th Cir.1928); Megley, *Design and Mechanical Patents Relating to the Same Subject Matter,* 44 J.P.O.S. 309 (1962); Gambrell, *Mechanical and Design Inventions: Double Patenting Rejections and the Doctrine of Election,* 45 N.Y.U.L.Rev. 441 (1970).

12. Section 101 of 35 U.S.C. (1976) affords the possibility of patent protection for certain classes of subject matter: process; machine; manufacture; and composition of matter. Section 171 of 35 U.S.C. (1976) affords the possibility of design patent protection for any new, original, and ornamental design for an article of manufacture.

13. Utility patents afford protection for the mechanical structure and function of an invention whereas design patent protection concerns the ornamental or aesthetic features of a design.

14. Irrespective of the wisdom or folly of taking out design patents in situations where there is any possibility of getting utility patents, the argument proceeds as follows. Since the design patent statute allows design patents only on ornamental designs for articles of manufacture, it follows logically that, at least in some settings, if double patenting were to exist between a design and a utility patent one of the two must necessarily claim inappropriate subject matter. Utility subject matter will be common to both patents. Gambrell, 45 N.Y.U.L. Rev. 441, 465. By implication, the design patent should be declared invalid for not satisfying the requirements of 35 U.S.C. § 171. *Gross,* 18

F.2d at 421. The claims of the utility patent would presumably be spared from a declaration of invalidity for double patenting by virtue of the invalidity of the design patent. Thus, the patentee has received only one valid patent. Yet, the issue of validity of the "offending" design patent has not always been before the court, and the CCPA, in an appeal from the PTO, has held claims to be unpatentable for double patenting. *In re Thorington,* 418 F.2d 528, 57 CCPA 759, 163 USPQ 644 (1969), *cert. denied,* 397 U.S. 1038, 90 S.Ct. 1356, 25 L.Ed.2d 649, 165 USPQ 290 (1970). While this court can consider questions of validity, we note that the question whether double patenting can obtain where one of the patents is invalid is one of first impression and one that has not been raised by the parties. We make no ruling on that issue in this appeal.

15. *Thorington,* 418 F.2d 528, 57 CCPA 759, 163 USPQ 644 (affirming rejection of claims for a fluorescent light bulb in view of previously issued design patent for same device); *In re Phelan,* 205 F.2d 183, 98 USPQ 156 (1953) (affirming double patenting rejection of utility claims for a finger ring in view of earlier issued design patent); *In re Barber,* 81 F.2d 231, 28 USPQ 187 (CCPA 1936) (affirming double patenting rejection of design claim for a flashlight cap and hanger ring because of lack of patentable distinction between claimed design and earlier utility patent); *In re Hargraves,* 53 F.2d 900, 11 USPQ 240 (CCPA 1931) (affirming double patenting rejection of claims covering a balloon tire construction in view of previously issued design patent).

16. *Wahl,* 624 F.2d at 1179, 206 USPQ at 871.

*Co.,*[17] in which the Seventh Circuit sought to explain the CCPA holdings in *In re Hargraves*[18] and *In re Dubois:*[19]

> Those cases state that double patenting exists if the feature in which the novel esthetic effect resides is the identical feature which produces the novel function so that a structure embodying the mechanical invention would of necessity embody the design, and vice versa.

We agree with the above analysis that double patenting will be found in a design/utility situation if the two patents cross-read. Further, the precedent of this court supports a broader test of double patenting, encompassing the double patenting of obvious variations as well as of the same invention. However, rather than focusing on the point of novelty, we wish to clarify that double patenting is determined by analysis of the claims as a whole.[20]

■ Double patenting, as applied between a design and a utility patent, is a judicially created doctrine based purely on the public policy of preventing extension of the term of a patent, even where an express statutory basis for the doctrine is lacking. Double patenting may be found in a design/utility setting "irrespective of whether the patent relied on in the rejection and the application [or patent] on appeal involve the same invention, or whether they involve inventions which are obvious variations of one another."[21] In the former situation ("same invention"-type) the test is whether the design and the utility patent claim the same subject matter. In the latter situation ("obviousness"-type), the test is whether the subject matter of the claims of the patent sought to be invalidated would have been obvious from the subject matter of the claims of the other patent, and vice versa. In considering that question, the disclosure of the "reference" patent may not be used as prior art. In certain situations, however, it may be used to define terms in a claim and to determine whether the embodiment claimed has been modified in an obvious manner.[22]

■ In applying the above tests, there is a heavy burden of proof on one seeking to show double patenting.[23] Double patenting is rare in the context of utility versus design patents.[24]

■ We now turn to examine the facts relating to double patenting in terms of the above guidelines. The '068 (design) patent claims the visible external surface configuration of a storage bin flow promoter, as shown in the drawing below.

Front view

Side view

Wahl '068 design patent

17. *Ropat Corp. v. McGraw-Edison Co.,* 535 F.2d 378, 381, 191 USPQ 556, 558 (7th Cir. 1976). *See also Transmatic, Inc. v. Gulton Ind., Inc.,* 601 F.2d 904, 910, 202 USPQ 559, 565 (6th Cir.1979); *Wahl,* 624 F.2d at 1179, 206 USPQ at 871.

18. *Hargraves,* 53 F.2d 900, 11 USPQ 240.

19. *In re Dubois,* 262 F.2d 88, 120 USPQ 198 (CCPA 1958).

20. *In re Swett,* 451 F.2d 631, 59 CCPA 726, 172 USPQ 72 (1971).

21. *Thorington,* 418 F.2d at 537, 57 CCPA at 768, 163 USPQ at 650. *See also Swett,* 451 F.2d at 635, 59 CCPA at 730, 172 USPQ at 75.

22. *In re Vogel,* 422 F.2d 438, 441–42, 57 CCPA 920, 164 USPQ 619, 622 (CCPA 1970) (affirming in part a double patenting rejection in a utility/utility situation).

23. *Transmatic,* 601 F.2d at 913, 202 USPQ at 567.

24. *Swett,* 451 F.2d at 635, 59 CCPA at 730, 172 USPQ at 75.

The claims of the '508 (utility) patent, on the other hand, are drawn to the interior construction of a flow promoter. The exterior appearance of the invention claimed in the '068 patent does not dictate the interior structure, nor does the exterior appearance disclose the function, of the invention claimed in the '508 patent. It is possible, and fully in accordance with the construction given the claims by the district court, to practice the invention claimed in the '508 patent without utilizing the claimed design. Moreover, the court found that Vibra had indeed practiced the invention claimed in the '508 patent without utilizing the design claimed in the '068 patent. Thus, the '508 patent does not claim the "same" invention as does the '068 patent.

The question then becomes whether one patent claims an obvious variation of that which the other patent claims, and vice versa. With respect to that question, Carman has failed to sustain the heavy burden referred to above. The record is wholly inadequate to establish that it would have been obvious to a person of ordinary skill in the art to make the interior of the device according to the claims of the '508 (utility) patent simply from knowledge of the exterior configuration of the device claimed in the '068 (design) patent. Thus, even if it would have been obvious to make the invention claimed in the design patent in view of the subject matter claimed in the utility patent by simply designing the exterior and interior walls of the material-receiving member to be parallel, as Carman has attempted to prove, that alone is insufficient to establish double patenting in accordance with the two-way test set forth above.

We hold that, under the above guidelines, the '508 patent does not claim the same invention as, or an obvious variation of, the invention claimed in the '068 patent. Thus, the design patent did not, in effect, extend the beginning of the term of the utility patent. For the above reasons, the '508

patent is not invalid for double patenting. We turn now to the issue of infringement.

## IV.

The district court found that the '508 patent was not literally infringed but was infringed under the doctrine of equivalents. Vibra challenges the former finding and Carman the latter. Infringement is ultimately an issue of fact [25] and, again, the trial judge's findings are not to be upset unless clearly erroneous.

## A.

The finding that the claims are not literally infringed is based on the court's construction of the claims and, in particular, of the limitation "concave." The court received conflicting expert testimony on the meaning of the term "concave," as well as on the construction of claims. Additionally, the court noted various statements in the specification and claims of the '508 patent. These statements distinguish a concave form from a conical form. On the basis of this evidence, Judge Meanor concluded that the literal language of the claims was limited to a material-receiving member having compound concave sloped surfaces, to the exclusion of a conical shape.

We note that while opinion may vary with respect to the meaning of the term "concave," Judge Meanor correctly interpreted the literal language of the claims in light of the specification. In doing so he fully considered the conflicting expert testimony. He found that the distinction between conical and concave is disclosed in the specification and appears explicitly in claim 6. On the basis of these conclusions and findings we hold that the finding, that Carman's conical material-receiving member does not literally infringe the claims of the '508 patent, is not clearly erroneous. The district court's finding with respect to literal infringement is fully supported on the record.

25. *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609, 70 S.Ct. 854, 856, 94 L.Ed. 1097, 85 USPQ 328, 331 (1950); *Sealed*

*Air Corp. v. U.S. Int'l Trade Comm'n,* 645 F.2d 976, 984, 209 USPQ 469, 476 (CCPA 1981).

**942**

### B.

■ The claims were, however, held to be infringed under the doctrine of equivalents. The court first examined the invention and the alleged infringing device to ascertain if the circumstances were proper for application of the doctrine of equivalents [26]—whether the accused device " 'performs substantially the same function in substantially the same way to obtain the same result.' " These circumstances are met when the alleged infringer seeks to appropriate the invention with minor modification to avoid the literal language of the claims.[27]

The principal function of the invention is to promote the flow of material from the hopper. The accused infringing device also performs that function. While the accused infringing device does not perform the secondary function of stopping the flow when vibration is stopped, it was entirely proper for the court to conclude that the identity of primary function constitutes substantial identity of function for purposes of the doctrine of equivalents. There is no limitation in any of the claims in issue that would require the flow stopping function. It is apparent from the court's findings that both devices operate by inducing a similar pattern of flow through the material-receiving member. This flow is effected in both devices by the same combination of forces. The court found that the precise slope of the walls is not critical to the invention. The lateral force exerted on the flow is not substantially altered by the shape of the walls. Additionally, the same result is obtained from the invention and from the accused infringing device. We find no clear error with the finding that the accused infringing device is the legal equivalent of the invention. Therefore, we hold that application of the doctrine of equivalents was proper.

Once it is determined that the doctrine of equivalents is applicable, a finding of infringement is not certain. The doctrine of equivalents is subject to two types of limitation which may prevent a finding of infringement: (1) estoppel based on the prosecution history of the patent ("file wrapper estoppel") and (2) invalidity of the claims according to the proposed construction in view of the prior art. Estoppel, an affirmative defense,[28] was not raised below. Carman strenuously argues the second limitation, however.

The court below, in an exhaustive analysis, examined the proposed construction of the claims under the doctrine of equivalents to determine whether such construction would invalidate the claims under section 102 or 103. Its analysis is more than adequate to answer this question.

Under the doctrine of equivalents, the court considered compound straight sloped (conical) walls to be the legal equivalent of compound varying sloped (concave) walls in the material-receiving member. Even with this expansion in the scope of the claims, Judge Meanor found patentable differences between the invention and the prior art. None of the references was found to disclose compound broken-sloped walls. We agree with the district court that, in spite of the broadening effect of the doctrine of equivalents, with such construction accorded the claims they would not be invalid in view of the prior art. Thus, application of the doctrine of equivalents is not limited in this case. We find no clear error in Judge Meanor's finding that the Carman device infringes the '508 patent under the doctrine of equivalents.

### V.

The '508 patent was found valid under the applicable statutory and judicial criteria of validity in view of appropriate findings of fact. We agree with the district court

---

**26.** *Graver Tank,* 339 U.S. at 608, 70 S.Ct. at 856, 85 USPQ at 330 (quoting *Sanitary Refrigerator Co. v. Winters,* 280 U.S. 30, 42, 50 S.Ct. 9, 13, 74 L.Ed. 147, 3 USPQ 40, 44 (1929)).

**27.** *Cf. Coleco Ind., Inc. v. U.S. Int'l Trade Comm'n,* 573 F.2d 1247, 1258, 65 CCPA 105, 118, 197 USPQ 472, 480 (1978) (Judge Rich concurring).

**28.** Fed.R.Civ.P. 8(c).

that the '508 patent is not invalid under section 102 or 103. Additionally, the patent is not invalid for double patenting under the criteria articulated in this court's precedent. Thus, we affirm the district court's conclusion that, insofar as it is challenged here, the '508 patent is valid. We find no clear error in the findings below that the patent is infringed by Carman's device under the doctrine of equivalents, but not literally infringed. Thus, we affirm the judgment of the district court.

AFFIRMED.

NIES, Circuit Judge, concurring-in-part.

I concur in the decision that the '508 patent is not invalid for double patenting. However, I do not share the doubts that principles of double patenting should apply to design/utility patent situations. I also do not share the view that the Third Circuit standard which limited double patenting to "same invention" type is reconcilable with the decisions of the U.S. Court of Customs and Patent Appeals, e.g. *In re Thorington*, 418 F.2d 528, 537, 57 CCPA 759, 768, 163 USPQ 644, 650 (1969).

More significantly, I do not agree that in obviousness type double patenting each patent must be found obvious from the other. If one patent is obvious from the other and has the effect of extending its term, the second to issue is invalid. In this case I agree with the majority that it would not have been obvious to one of ordinary skill in the art with knowledge of the '068 design patent to make the claims of the '508 patent. Thus, the patentee has not obtained extended protection for the device claimed. Alternatively, since a device covered by the claims of the '508 patent need not take the shape claimed in the design patent, the term of the design patent is not being improperly extended by the utility patent.

Since I discern no possible extension of the term of protection of the invention of either patent, I agree that the '508 patent is not invalid for double patenting.