Eugene A. WAHL and Vibra Screw Feeders, Inc., Plaintiffs-Appellants,

v.

CARRIER MANUFACTURING CO., Inc., Defendant-Appellee.

No. 18324.

United States Court of Appeals, Seventh Circuit.

Aug. 30, 1971.

Rehearing Denied Nov. 2, 1971.

Certiorari Denied March 20, 1972.

See 92 S.Ct. 1255.

Richard C. O'Connor, New Albany, Ind., Stanton T. Lawrence, Jr., New York City, Orbison Rudy & O'Connor, New Albany, Ind., for plaintiffs-appellants; Pennie, Edmonds, Morton, Taylor & Adams, Charles J. Brown, Charles E. McKenney, New York City, of counsel.

Thomas F. McWilliams, Mann, Brown, McWilliams & Bradway, Chicago, Ill., for defendant-appellee.

Before MAJOR, Senior Circuit Judge, and FAIRCHILD and PELL, Circuit Judges.

MAJOR, Senior Circuit Judge.

This is an appeal from a judgment entered November 13, 1969, by Judge William E. Steckler, holding all four claims of United States Patent No. 3,173,583, entitled "Bin Activator," invalid, and dismissing plaintiffs' charge of infringement. Eugene A. Wahl (Wahl) is the owner of the patent and Vibra Screw Feeders, Inc. (Vibra Screw) is his exclusive licensee. The latter is a New Jersey corporation, and defendant Carrier Manufacturing Co., Inc. (now by change of name, Carman Industries, Inc.) is a Kentucky corporation having its principal place of business at Jeffersonville, Indiana.

After disposal of numerous discovery proceedings, the case came on for trial before the court without a jury on November 6, 1967, and continued on November 7, 8, 9, 10, 11, 13 and 14. On the last date and at the conclusion of defendant's presentation, the case, on plaintiffs' request, was continued to August 19, 1968, on which date plaintiffs introduced testimony purportedly for the purpose of rebutting the case made by defendant. As might be expected after a trial of such length, the record is vol-

uminous. (The transcript covers some 1300 pages, and the appendix filed in this court more than 600 pages.) In addition, many physical exhibits were introduced, including the patent in suit, numerous prior art patents and many drawings, diagrams, pictures, etc., all explained by expert witnesses as an aid to the court in its evaluation of the contentions advanced by the parties.

The prior art relied upon by defendant to anticipate and invalidate the patent in suit was (1) the Heavy Duty Feeder made and sold by plaintiffs for several years prior to the Wahl application filing date; (2) the Vibra-Portioner [1] which was at one time made and sold by defendant, and (3) the Musschoot Patent No. 3,083,811. The court found that the patent in suit was anticipated by each of these prior art citations, none of which was cited in the Patent Office and all of which were found to be more pertinent than that which was cited.

The court also found that the subject matter sought to be patented by Wahl, in view of the prior art, would have been obvious at the time the invention was made, to a person having ordinary skill in the art to which the subject matter pertains, and was, therefore, invalid under Title 35 U.S.C.A. Sec. 103.

The court in its findings 6, 7 and 8 describes the nature of the Wahl invention and sets forth the claims involved. Inasmuch as there is no dispute as to the propriety of these findings, we adopt them:

"6. The specification of the Wahl patent in suit generally describes the apparatus set forth therein as follows:

'This invention relates to apparatus for use in conjunction with a storage bin, or hopper, and more particularly to activator apparatus adapted for attachment to a storage bin to promote the flow of material therefrom.' (PXX–1, Col. 1, lines 6–10).

Also it is stated:

'An object of this invention is the provision of improved apparatus for use with a storage bin, or hopper, to promote a positive discharge of the contained material through the hopper discharge opening.' (PX–1, Col. 1, lines 43 to 46).

In the patent it is also stated:

'An object of this invention is the provision of apparatus for promoting the flow of material from a storage hopper having a discharge opening at the lower end thereof, which apparatus comprises a material-receiving member having sloping walls terminating in a material-dispensing opening, means vibratorily suspending the material-receiving member in alignment with the hopper discharge opening, means for vibrating the material-receiving member in a plane predominantly normal to the axis thereof, and means for imparting such vibrations to the contained material in the region of the hopper discharge opening.' PX–1, Col. 1, lines 54 to 65).

"7. The Court finds that the application for the Wahl patent in suit was filed on May 9, 1962, and is a continuation-in-part of an earlier application filed April 4, 1962 which was abandoned. The original application contained only sheet 1 of the patent drawings, and, in general, the specification was directed to the structure shown in Figure 1 of the drawings. The continuation-in-part application added sheet 2 of the drawings, and added to the specification a description of the device shown in Figure 4 of the drawings. The structure shown generally in the Wahl patent comprises a supply hopper terminating in an opening at the bottom thereof and, attached by resilient supporting means to the hopper, there is a cross member which carries a motor or vibrating member to vibrate this cross member. Attached to the cross member is a material-receiving means which is vibrated with the cross

---

1. Carrier Patent No. 3,187,884 describes the Vibra-Portioner and may be considered as the same item of prior art.

member and which material-receiving means is positioned below the supply hopper. In both forms of the bin activator of the Wahl patent, that of Figure 1 and Figure 4, there is included as attached to the material-receiving means, a material-agitating means which is vibrated with the material-receiving means. In Figure 1, the material-agitating means comprises upstanding rods entering into the supply hopper, and these upstanding rods are attached to the material-receiving means and vibrated therewith. In Figure 4, there is a different form of material-agitating means which comprises an upstanding rod secured to a bracket which is carried by the material-receiving means, and this upstanding rod adjustably supports a baffle which is positioned within the material-agitating means and at the outlet opening of the hopper. As stated in the specification, the material-receiving means supporting the material-agitating means being resiliently supported from the hopper is vibrated by a motor, and upon vibration of the material-receiving means and the material-agitating means, the bulk material in the hopper is induced to flow therefrom.

"8. Plaintiff charges infringement of claims 1, 2, 3, and 4 of the patent in suit. Claims 2, 3 and 4 are dependent from claim 1. Claim 1 is as follows:

'1. Apparatus for promoting the flow of material from a vertically-disposed storage bin having a discharge opening at the bottom, which apparatus comprises,

(a) a generally-conical, material-receiving member having an inlet opening corresponding substantially to that of the bin discharge opening and a truncated apex forming an outlet opening,

(b) means vibrationally supporting the conical member in a vertical position with the wall portion forming the inlet opening spaced from the bin wall,

(c) material-agitating means spaced from the inner wall of the conical member and rigidly secured thereto, said agitating means being disposed within said conical member and extending substantially to the said inlet opening thereof, and

(d) means vigorously vibrating the conical member.'

"Claim 2 calls for the invention of claim 1, but further defines the means for vibrating the conical member as a gyrator comprising an eccentrically-mounted weight rotatable by an electric motor. Claim 3 calls for the invention of claim 2, but defines the material-agitating means as a baffle member disposed in the region of the bin discharge opening. Claim 4 calls for the invention as recited in claim 2, and defines the material-agitating means as an inverted conical baffle member disposed in the region of the bin discharge opening, and further describes the vibration as in a plane normal to the axis of the conical member."

Plaintiffs on brief state the contested issues as follows:

"I. Was it reversible error for the District Court to adopt the overly simplistic definition of the Wahl invention urged by defendant on the validity issue, and then predicate its finding of anticipation (by three separate items of prior art) and obviousness on that definition rather than on a fair reading of the Wahl claims in context?

"II. Was it reversible error for the District Court to adopt the unduly limited definition of the Wahl invention urged by defendant on the infringement issue, involving dimensional limitations nowhere mentioned in the Wahl patent, and then predicate its finding of non-infringement (as to some but not all of defendant's devices) on that definition rather than on a fair reading of the Wahl claims in context?"

It appears to us that issue I is stated in a rather novel manner. However stated, we think the ultimate issue is whether the court's findings of fact are clearly erroneous. Rule 52(a) of the

Federal Rules of Civil Procedure provides in part:

> "Findings of Fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

The two principal witnesses were Wahl, the patentee, who testified at length in explaining his patent and his invention, or what he thought he had invented, and Don A. Fischer, an expert witness for defendant. We think it fair to state that a reading of the testimony of these two witnesses reveals that Wahl had much practical experience in the manufacture and development of apparatus designed to facilitate the withdrawal of material from storage bins. It is conceded, however, that he was not an expert in reading and describing patent claims. On the other hand, Fischer lacked the practical experience of Wahl but was eminently qualified to interpret patent claims and the disclosure in connection therewith. He was an engineer, a former Dean of an engineering school, and a practicing attorney for six years, admitted to practice before the Patent Office. While the district court did not expressly so state, it is evident that in the main it rejected the testimony of Wahl and credited that of Fischer.

Plaintiffs, consistent with the nature of their presentation here, rely upon the testimony of Wahl and ignore that of Fischer; in fact, on brief they do not mention Fischer's name or refer to his testimony except on a point relative to the issue of infringement.

Plaintiffs in their reply brief state that the district court did not "understand the concept of Wahl's claimed invention and how it differs from the prior art," and that he was "deceived * * aided and abetted by a Professor Fischer, whose professorial charisma was re-

lied on by defendant to legitimatize defendant's courtroom ploy." [2]

The record refutes the suggestion that Judge Steckler was led astray. It reveals that he was keenly aware of the issues for decision and the contentions of the respective parties, and actively participated in the examination of the expert witnesses. He required each side to submit proposed findings and conclusions of law, upon which arguments were heard. At the conclusion of such arguments counsel for both sides were invited to the court's chambers for a discussion concerning the findings and conclusions of law proposed by defendant. The court required of defendant numerous changes in its proposal, as evidenced by the court's entry of August 6, 1969, "Court met with counsel in chambers concerning the finalization of findings of fact and conclusions of law and indicated to counsel its objections to the proposed findings of fact and conclusions of law tendered by defendant and made suggestions for amendments thereof. Counsel for defendant is to prepare for submission to Court amended proposed findings of fact and conclusions of law and is to provide a copy to plaintiffs before filing the same with the Court." Defendant's proposal, amended to meet the requirements of the court, was adopted on November 5, 1969.

We hardly need cite cases in support of the rule that findings of fact of the trial court should not be set aside on review unless they are clearly erroneous. One case, however, Wahl v. Carrier Mfg. Co., Inc., 358 F.2d 1, a decision of this court, is of particular pertinency. In that case the action was brought by Wahl against Carrier for infringement of a "Power-Feeding Apparatus." The trial court found the patent valid and infringed and its findings were based largely on plaintiffs' expert testimony. The parties were the same as those here,

---

2. In a footnote they state that Fischer has given "expert testimony in patent cases about 45 times. It is apparent that no one is an expert in 45 different subjects." On the other hand, it is our thought that he must have proven his competency as an expert; otherwise, he would not have been so often called upon.

the attorneys on both sides were the same, and the case was tried by the same trial judge. In affirming the judgment, we stated (page 3):

"We agree with plaintiffs that like many patent infringement actions this one turns on ultimate technical facts the determination of which requires resolution of conflicts in the testimony of experts, and that the court's recognition of the difficulties inherent in arriving at findings in this technical area did not remove those findings, when made, from the scope of Rule 52(a).

"Therefore, insofar as the detailed findings of the court, upon which it predicates its conclusions of validity and infringement, concern factual issues such as the use made of prior art, the nature of the improvement made over prior art, and the characteristics and operational functions of the patented structure and the accused apparatus, Rule 52(a) of the Federal Rules of Civil Procedure (28 U.S.C.A.) applies. The court heard the testimony of expert witnesses in connection with these matters and witnessed the demonstration of the physical exhibits, including the operation of the accused apparatus. The scope of our review of such findings is therefore limited to a determination of whether or not they are 'clearly erroneous'. Armour & Co. v. Wilson & Co., 7 Cir., 274 F.2d 143, 151–157; Minnesota Mining and Mfg. Co. v. Technical Tape Corp., 7 Cir., 309 F.2d 55, 57; Aerosol Research Company v. Scovill Manufacturing Co., 7 Cir., 334 F.2d 751, 753. If they find support in the evidence we are bound thereby and there remains but the question of whether the court applied the correct legal criteria in reaching the ultimate conclusions it did."

Plaintiffs attempt to escape the potency of Rule 52(a) by arguing that we are in as good position to pass upon the validity of the patent in suit as was the district court. That argument is reiterated in the reply brief, "A reading of the District Court's Findings and Conclusions, the patent in suit and the three prior references held to be anticipations will provide this Court with all the essential facts it needs to review the District Court's holding of invalidity." [3]

Cited in support of this argument are two decisions of this court, Charles Peckat Mfg. Co. et al. v. Jacobs, 178 F.2d 794, and Nasco Incorporated v. Vision-Wrap, Inc., 352 F.2d 905. The situation in those cases was a far cry from that here. In *Peckat*, there was no parol testimony upon the issue of anticipation by the prior art, and we held that we were in as good position to interpret the patent and those relied upon to anticipate as was the trial court. In *Nasco*, we had a similar situation and stated (page 908):

"The defendant offered no testimony, expert or otherwise, on the prior patent art. The appealed decision rests entirely on documentary evidence and physical exhibits. Consequently, the court's findings, in so far as they concern the use made of prior art, the nature of the improvement made over prior art, and the operational functions and characteristics of the patented structure and the accused device, are deprived of the degree of finality which would otherwise attach under Rule 52(a) of the Federal Rules of Civil Procedure (28 U.S.C.A.). We are in as good a position as the trial court to examine and evaluate the evidence and make the necessary determinations ourselves."

In marked contrast, the court in the instant case heard voluminous testimony in a trial which lasted eight days. Both Wahl and Fischer in their capacity as experts testified in great detail in explana-

3. Plaintiffs attached to their reply brief a chart submitted, so it is asserted, to clarify plaintiffs' argument to this court. It supposedly illustrates the Wahl device, defendant's competing device, and the prior art devices. There is no showing as to who prepared the chart, or when, but admittedly it was not an exhibit in the district court.

tion of the many physical exhibits, including the patent in suit, the prior art cited in the Patent Office, and that not cited but relied upon by defendant and held by the court to anticipate.[4]

Plaintiffs' contention that the trial court did not understand the Wahl invention and, therefore, erroneously found that it was anticipated by prior art disclosures is predicated mainly on the testimony of Wahl, ignoring that of Fischer, defendant's expert witness. It would prolong this opinion beyond any permissible length to set forth all of the court's findings on this phase of the case; therefore, we shall quote only the finding with reference to the Heavy Duty Feeder made and sold by plaintiffs. The court found:

"10. The facts concerning the Wahl heavy duty feeder:

"(a) It is conceded that Vibra Screw sold a heavy duty feeder more than one year prior to the filing of the original application for the Wahl patent. This heavy duty feeder is shown in defendant's Exhibits AA–1, B, C, D and E. As stated in defendant's Exhibit A–1, one of the purposes of the vibrating portion of the heavy duty feeder is to provide a vibrating baffle plate attached to a feeder trough which constitutes a material-receiving member, and the vibrating baffle plate enters the supply bin to transmit vibration directly into the material, facilitating the flow of material from the supply bin into the feeder. Although this device included a feeder for the volumetric discharge of material from a supply hopper, essentially there is shown in the heavy duty feeder, a material-receiving member positioned below a supply hopper, a vibrated material-receiving member which carries a vibrated material-agitating means positioned within the material-receiving member, and

which material-agitating means is positioned adjacent the discharge outlet of a hopper, and upon vibration induces the flow of material therefrom. In function and in structure, the vibrating portions of the heavy duty feeder are substantially identical with the structure shown in Figure 4 of the Wahl patent in suit.

"(b) During the course of the trial, Mr. Wahl, plaintiff and owner of the patent here in suit, referred to a difference between the heavy duty feeder and the bin activator shown in his patent stating that the heavy duty feeder was intended only for use with small bins or hoppers, whereas, his bin activator was intended for use primarily with large hoppers. The Court finds that the specification of the Wahl patent and the claims do not state that the bin activator is intended for use primarily with large hoppers. Wahl conceded that the bin activator of the patent in suit could be applied to very small bins, and that under these circumstances, either the bin activator or heavy duty feeder could be used to induce the flow of material from the bin. Furthermore, the literature issued by Vibra Screw (Exhibit D) relating to the heavy duty feeder states: 'Designed for tonnage rates, it connects to any supply pipe or hopper and will assist flow of material out of such hoppers.'

"(c) The Court finds that the Wahl heavy duty feeder contains the elements of the claims of the patent in suit. Although element (a) is in the claim defined as a generally conical material-receiving member, the specification of the patent, in Col. 5, states that this material-receiving member may be conical, square, rectangular, or any

---

4. The transcript contains some 1294 pages, of which 582 pages are devoted to the testimony of Wahl, and 270 pages to that of Fischer. Thus, about two-thirds of the transcript is devoted to the testimony of these two witnesses.

other shape to conform to a particular hopper shape. The material-receiving member of the heavy duty feeder is therefore the equivalent of the generally conical material-receiving member called for in claim 1.

"(d) The Court finds that the claims of the patent in suit may be read on the structure of the heavy duty feeder, and that none of the prior art cited by the Patent Office is as pertinent to the invention claimed in the Wahl patent as the Wahl heavy duty feeder. If the Patent Office, during the prosecution of the application for the Wahl patent, had before it the drawing of the heavy duty feeder (Exhibit B), with the knowledge that the device was on sale in 1959, the Patent Office would not, in the opinion of the Court, have granted any claims in the Wahl application.

"(e) The file history of the application for the patent in suit discloses that the existence of the heavy duty feeder was not called to the attention of the Patent Office."

It will be noted that paragraphs (a) and (b) of this finding are based largely upon concessions made by Wahl during his cross-examination, while paragraphs (c), (d) and (e) are based on the testimony of Fischer.

Fischer testified that the claims of the patent read directly on the Vibra Screw Heavy Duty Feeder as illustrated by Exhibit B, and that all of the elements function in the same way to produce the same result as the device of the patent in suit. He pointed out that during the prosecution of the application for the Wahl patent there was no disclosure to the Patent Office by Wahl of the existence of the Vibra Screw Heavy Duty Feeder and the fact that it had been on sale by plaintiffs more than one year prior to the filing of the application for the Wahl patent. He also testified that none of the prior art cited by the Patent Office was as pertinent to the invention claimed in the Wahl application as

the device illustrated in Exhibit B, and that in his opinion if the Patent Office had before it the drawing of Exhibit B with the statement that the device was on sale in 1950, the Patent Office would not have granted the claims of the Wahl patent.

Thus, the trial court was confronted with the testimony of two knowledgeable witnesses who in some respects were in wide disagreement as to what Wahl had invented, as disclosed by his patent, and the disclosure of the prior art. It was that court's function, not ours on review, to weigh the conflicting testimony and judge of the credit to be given the witnesses. We are satisfied that the court properly performed its duty in this respect. Certainly we cannot hold that the finding was clearly erroneous under Rule 52(a).

The court found that Wahl's patent was anticipated by the Vibra-Portioner manufactured and sold by defendant, and by Carrier Patent No. 3,187,884, issued to defendant. While the court made a separate finding as to each of these items, the patent discloses and illustrates the Vibra-Portioner and, as stated in plaintiffs' brief, " * * * these items of prior art are properly treated as one item." Plaintiffs' principal point is that the material-receiving means of the Wahl invention were not disclosed by these items of prior art. Plaintiffs state on brief, "As stated several times herein, the shape and location of the material-receiving member is crucial to the invention."

On this phase of the case, as well as on many others, the testimony of the experts as to what was shown by Wahl and the prior art under discussion was conflicting. For instance, Wahl testified:

"A. The Carrier Patent does not have a material-receiving member coincident with the compaction zone which in this case, as in all other conical members, lies toward the outlet of the conical member.

Q. [By Mr. Brown] Can you tell us where that is in relation to the reference numerals?

A. That would be just above numeral 32—let us say we are now talking about the hopper designated by number 31, the outlet of the hopper I believe is number 32 and the compaction zone lies just above the * * *.

Q. Mr. Wahl, what measures do you find Carrier Patent teaches in connection with relieving problems of flow at that particular zone?

A. The only thing Carrier uses there is a vibrating baffle similar to that which appears in the Wahl Heavy Duty Feeder."

On the other hand, Fischer testified:

"Q. Are you able, then, in your interpretation of claim 1 of the Wahl patent in suit, to find in the Carrier patent, all of the elements of the claim?

A. Yes, I did.

Q. Do those elements, as set forth in the Carrier patent, operate in substantially the same manner to produce substantially the same result as the bin activator of the Wahl patent?

A. Yes, they do. The material-agitating means vibrates the material and it flows out of the top receptacle into the material-receiving member that also vibrates the material, and the material comes out of chutes from the material-receiving member."

He also testified that in his opinion if the Patent Office had had before it prior art such as the Carrier patent, it would not have granted the claims of the Wahl patent.

The court found that Wahl's invention was anticipated by Musschoot Patent No. 3,083,811, issued April 2, 1963. Plaintiffs argue that like all other items of prior art found by the district court to anticipate, there is not found in Musschoot a "generally-conical material-receiving member," as disclosed by Wahl. Plaintiffs' argument as to Musschoot, as it is to all other prior art found to an-

ticipate, relies upon the testimony of Wahl and ignores that of Fischer. The latter testified in detail in comparing Musschoot with Wahl as the basis for his conclusion that all of the elements set forth in the Wahl patent were found in the disclosure of Musschoot, and that the structure shown performed the same function as the Bin Activator in Wahl.

To hold, as plaintiffs would have us do, that the court's findings that Wahl's Heavy Duty Feeder, defendant's Vibra-Portioner (Carrier patent No. 3,187,-884), and the Musschoot patent did not anticipate Wahl would require us to conclude that the trial judge improperly gave credit and weight to the testimony of Fischer. We recognize that plaintiffs' argument on this score is not without plausibility, but we assume it was made to the trial court and rejected. It was the function of that court to resolve the conflict in the testimony, and we cannot hold that its resolution was clearly erroneous.

Title 35 U.S.C.A. Sec. 103 provides that a patent may not be obtained "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."

The court (finding 15) found:

"The differences between the subject matter sought to be patented in the Wahl patent and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which the subject matter pertains."

The court in paragraph (b) of finding 15 found:

"The Court finds from the record in this case, and the prior art devices referred to above, that at the time the Wahl asserted invention was made the art of vibration to induce material to flow from a hopper was well known. The level of the skill at that time was

such that it was known, or obvious, to a person of ordinary skill in the art to induce flow from a hopper by the use of a vibrating material-receiving means which carries a vibrating agitating means positioned within a hopper adjacent to the outlet end of a hopper or just below the discharge end of a hopper, whereby the simultaneous vibration of the material-agitating means and material-receiving means would induce flow of hard-to-handle material from the hopper, thus preventing the bridging or arching of material within the hopper. The witness Dumbaugh, an employee and officer of defendant corporation, testified that he was first employed by defendant on August 1, 1962 when the corporation had few employees, and that his prior experience did not include any information relative to bin activators, feeders or other vibrating devices. Upon becoming employed by defendant, his initial project was to improve the Vibra-Portioner, then being sold by defendant, and without any experience in the vibrator field, and within a matter of 6 weeks, he had developed a device substantially identical with that shown in the Wahl patent, functioning in the same way to produce the same result. The Court finds from this evidence it is established that to a person of less than ordinary skill in the art, the device shown and described in the Wahl patent, functioning in the same way to produce the same result, could be developed within a relatively short period of time from the time the problem was first encountered."

The court also found (finding 16):

"There is an assertion that defendant's accused vibrating hoppers were copied from plaintiffs' commercial device, and the Court finds, as a fact, that Dumbaugh, an employee of defendant corporation, completed the design of the prototype, which ultimately became defendant's feeders, as early as September 16, 1962, when he modified the Vibra-Portioner then being sold by defendant. Prior to this time he had not seen any of the literature issued by plaintiff. Some reference has been made to the proposed sale by plaintiff of a feeder to the Austin Company, but the Court finds, as a fact, that the first contact defendant had with the Austin Company job was November 9, 1962, after defendant had completed its modified version of its Vibra-Portioner. The hoppers made by defendant herein charged to infringe were developed independently by defendant."

There is no question but that Dumbaugh testified as the court found. Plaintiffs, with some plausibility, attack the testimony of this witness as incredible. Again, however, credibility of the witness and the weight to be given his testimony was a matter for the trier of the facts.

In Graham et al. v. John Deere Co. et al., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545, the court in discussing the factors relevant to the issue of obviousness stated (page 17, 86 S.Ct. page 694):

"Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy."

See also our decision in Akron Brass Co. v. Elkhart Brass Mfg. Co., 353 F.2d 704, 706.

The court was not unmindful of plaintiffs' reliance upon commercial success, as shown in its conclusion of law:

"Although plaintiffs have established some commercial success of the

devices covered by the patent in suit, such commercial success cannot in a case such as this, render valid a patent otherwise invalid. In any event, commercial success may be used only where there is some doubt as to the validity of a patent. Good and valid patents do not need commercial success to sustain them. Invalid patents cannot be helped by commercial success."

In connection with Dumbaugh's solution of the problem of discharging materials from an upper bin, the statement of this court in Novo Industrial Corp. v. Standard Screw Co., 374 F.2d 824, 828, is pertinent:

"The development of the valve of the patent in suit, and the independent and almost contemporaneous development and introduction of the defendant's accused valve structure which followed, in our judgment warrant the conclusion that the structure of the patent in suit was but the result of application of ordinary skill in the art to a problem which for the first time was beginning to assume significant commercial importance to the automotive industry."

The court's finding on the issue of obviousness also finds support in the testimony of defendant's expert, Fischer, who as a university professor of engineering for some three years frequently submitted problems to the students for solution as a part of their training program. After relating his experience with his students, particularly those who had about completed their engineering course, he concluded his testimony as follows:

"Q. Then my question is would the solution to the problem as proposed by Wahl in his patent have been obvious to a person having ordinary skill in the art?

A. In my opinion it certainly would. And I also base this on what it states in the Musschoot patent about arching and how to break up arching."

We find no reason to reject the court's finding on the issue of obviousness, and it follows that it correctly held as a matter of law that the Wahl patent was invalid for that reason.

We now consider Carrier Reissue Patent No. 26,291, issued October 31, 1967, with claims 7, 8, 9 and 10, which thereby became additional to those originally in Carrier Patent No. 3,187,884. The court in finding 17 relative to this reissue patent preliminarily stated that it "plays a very important role in the consideration of this case." We disagree with this statement and think its role is minor, in fact, of little if any consequence. On October 14, 1969, on defendant's application, the Patent Office allowed a disclaimer of all claims of the reissue patent, thereby effectively removing them from the case. See Soundscriber Corp. v. United States, 360 F.2d 954, 961, 175 Ct.Cl. 644; In Application of Heinle, 342 F.2d 1001, 1006, 52 CCPA 1164. This disclaimer was allowed about a month prior to the entry of the judgment in this case and we are not advised if the court was aware of the disclaimer.

Counsel for defendant late in the trial did suggest "that these claims granted in the reissue patent are probably invalid because of the information we discovered from Mr. Wahl concerning his own bin feeder. * * * But what this does is to tie the earlier Carrier Patent, the earlier Exhibit B bin activator—or heavy duty feeder of Mr. Wahl, the subject matter of the Wahl Patent, all in the same category with the Carrier Patent and its disclosure preceding that which is shown in the Wahl Patent. * * * The Patent Office, as it has now done, could have granted that claim to Carrier. Carrier would then have the patent, Wahl would not; Carrier would be suing Wahl for infringement."

We strongly suspect that it was the strategy of defendant's counsel to inject these reissue claims into the case in an attempt to obtain a finding that the Carrier patent was valid, or at least an expression by the court to that effect. This latter, as subsequently shown, it

succeeded in doing. No issue as to the validity of Carrier was before the court, and we think it was error to make a finding or express an opinion on that score.

Defendant on brief explains the reason for its disclaimer of the reissue claims, as follows, "It has been concluded that since Wahl made and sold these heavy duty feeders in 1959 and 1960, these heavy duty feeders stand as a prior use bar to the valid grant to defendant of the claims added by reissue. *In effect, insofar as the material-agitating means of plaintiffs' heavy duty feeder are concerned, they are substantially equated with the same elements in the Carrier patent.* [Italics supplied.] For this reason, the claims added to the Carrier patent by reissue have now been disclaimed and the action is completely consistent with the position of defendant in this case to the effect that not only is the structure of the Carrier patent a complete anticipation of the claims of Wahl's bin activator, but also plaintiffs' heavy duty feeder is likewise a complete anticipation."

This explanation engenders more confusion than light. The court had previously found (finding 10(c)) "that the Wahl heavy duty feeder contains the elements of the claims of the patent in suit," and for that reason anticipated. The court had also previously found (finding 11(d)), referring to the material-receiving means of Carrier, " * * * the structure and the function of this portion of the device is substantially identical to the structure and function of the device shown in Figure 4 of the Wahl patent in suit." In finding 11(e) the court had found "that the device of the Carrier patent has all of the elements of claim 1, with these elements functioning substantially in the same way to produce substantially the same result in the same way as the device of the patent in suit."

Thus, defendant's explanation leads to the conclusion that while Carrier disclosed all of the elements of Wahl and the latter was anticipated by its Heavy Duty Feeder, Carrier was left unscathed by the same prior art. Admittedly, Wahl's Heavy Duty Feeder was prior art to Carrier, as it was to Wahl.

The court also previously found (finding 13) that the Musschoot patent contained all of the basic elements of the claims in Wahl and "these elements in the Musschoot device function in the same way as the bin activator in the Wahl patent to produce substantially the same results." Musschoot was prior art to Carrier, as it was to Wahl.

As stated by defendant's counsel before the trial court, the original Carrier patent and Wahl's Heavy Duty Feeder (the subject matter of the Wahl patent) fall in the same category.

The court in its finding relative to the reissue claims made no mention of the fact that they had been disclaimed on the basis of the disclosure made in Wahl's Heavy Duty Feeder and were no longer in the case.

Paragraph (a) describes the procedure followed by Carrier in obtaining the reissue claims. Paragraph (b) points out that both the Carrier and Wahl patents were pending in the Patent Office at the same time and that no interference was declared. Paragraph (c) states:

"(c) Based upon the record in this case, it is the Court's opinion that, if the Patent Office had declared an interference between the application for the Carrier patent and the application for the patent in suit, Carrier should have been determined to be the prior inventor, and the claims directed to the common subject matter,—i. e., the concept of providing a material-receiving means vibrationally supporting a material-agitating means positioned below a supply hopper would have been awarded to Carrier, and no claims would have been awarded to Wahl."

In our view, this is not a finding of fact, but is argumentative in nature and based on speculation. We do not know what the Patent Office would have done if an interference had been declared, and

we doubt if Judge Steckler or defendant's expert witness could have known. Either party could have called for an interference. If Carrier, whose application for patent was filed prior to that of Wahl, had thought that its disclosure duplicated Wahl, it seems reasonable to believe that it would have called for an interference. Its failure to do so raises an inference that it had no such notion at the time the two patents were pending, and that the theory now advanced was evolved in preparation for this law suit.

Paragraph (d) states:

"(d) The fact that the Patent Office granted the Carrier reissue patent with claims dominating the structure shown in the Wahl patent in suit is evidence that the Patent Office, with its expertise, considers that the subject matter disclosed in the original Carrier patent is substantially identical with the disclosures in the Wahl patent in suit."

Again, we think this finding is more argumentative than factual. If, however, the subject matter disclosed in Carrier was substantially identical with that in Wahl, it was also substantially identical with the disclosure of Wahl's Heavy Duty Feeder found to anticipate Wahl and prior art to both Wahl and Carrier. While there may be some portions of the finding on this issue which are tenable, we think considered as a whole it is clearly erroneous for the reasons stated.

The court after finding the patent invalid proceeded to make findings concerning the alleged infringement of the claims, if valid, by various devices made and sold by defendant. Plaintiffs offered in evidence an exhibit which disclosed the drawings of defendant's alleged infringing devices. The court, for reasons subsequently shown, divided such devices into two categories and found some to infringe and others not.

Defendant in defense of the infringement charge relies upon the doctrine of file wrapper estoppel, a theory thoroughly embedded in the law. Among the numerous cases cited we need mention only Exhibit Supply Co. v. Ace Patents Corp., 315 U.S. 126, 62 S.Ct. 513, 86 L.Ed. 736, and the recent decision of this court in Taylor-Reed Corp. v. Mennen Food Products, Inc., 324 F.2d 108. The theory is aptly stated by this court in *Taylor-Reed* (page 113):

"The applicant having limited his claim by amendment and accepted a patent, brings himself within the rules that if the claim to a combination be restricted to specified elements, all must be regarded as material, and that limitations imposed by the inventor, especially such as were introduced into an application after it had been persistently rejected, must be strictly construed against the inventor and looked upon as disclaimers."

There is no dispute as to the circumstances relied upon by defendant as constituting file wrapper estoppel. As the court found, the original claims filed by Wahl were rejected over the prior art for the reason that there was no specific location for the material-agitating means with respect to the conical member. Specifically, the court found:

"By a Patent Office rejection of January 28, 1964, the Examiner rejected this claim for the reason that the location of the agitating means was recited so broadly that it read upon one of the elements of the prior art Rouse patent. After this rejection, this claim was amended to locate the agitating means as 'being disposed within said conical member and extending substantially to the said inlet opening thereof.' The Court finds that in order to avoid prior art, the agitating means was specifically located as being within the conical member and *extending substantially to the said inlet opening thereof.*" (Italics supplied.)

The court further found:

"(c) The vibrating hoppers sold by both plaintiff and defendant have the material-agitating means located at varying positions with respect to the inlet opening. Sometimes the apex of

the cone or baffle, which constitutes the material-agitating means, is positioned substantially below the inlet opening, and in other devices, this material-agitating means is positioned substantially below the inlet opening of the cone member or material-receiving means. In the light of the prosecution history, and the file wrapper estoppel just referred to, the Court finds there is infringement of these claims only if the apex of the cone or the material-agitating means comes *within one inch of the inlet opening.* There are some such devices made and sold by defendant, and if the claims are valid, such devices infringe the claims of the patent in suit." (Italics supplied.)

The court concluded:

"Although an invalid patent may not be infringed, the Court finds that if the claims of the patent in suit are valid they are infringed only by each of the devices made and sold by defendant wherein the apex of the cone or material-agitating means comes *within one inch of the inlet opening of the vibrating* material-receiving means, and this finding is based upon the file wrapper estoppel heretofore referred to." (Italics supplied.)

Thus, the issue on this facet of the case is whether the requirement that the agitating means be located as "extending substantially to the said inlet opening thereof" (the conical member), inserted in the claims in order to secure their allowance over the prior art, can reasonably be interpreted to be met only if such means "comes within one inch of the inlet opening," as interpreted and found by the court.

Plaintiffs argue that this dimensional limitation is arbitrary and devoid of all realism. They argue, as Wahl indicated in his testimony, that "extending substantially" to the inlet opening could as well be interpreted as meaning a location at any point in the upper half of the cone, as contrasted with the lower half.

The fallacy of plaintiffs' argument on this point is that it is without substantial support in the evidence. Only Wahl and Fischer testified as to the interpretation to be given to the phrase, "within one inch of the inlet opening." Fischer reviewed the file wrapper history, including the circumstances under which Wahl's claims were allowed, a reading of which discloses that he had a substantial basis for his opinion that the dimensional limitation of one inch was proper.

On the other hand, Wahl's testimony as to his interpretation of the claims of his patent in the light of the prosecution history and what he considered to be an infringement, specifically with reference to the material-receiving means, was confusing and uncertain. He expressed the view that it could be at any point within six inches or one foot from the inlet opening. His confusion in this respect is shown by his testimony:

"Q. Now, each time you have notified a customer that Carrier, in your opinion, is infringing the claims of the patent in suit, have you known specifically which device Carrier was proposing to sell to that customer?

A. We didn't particularly concern ourselves about which device. So far as we are concerned, both devices are take-offs from our bin activator.

Q. Do they come within the claims of the patent?

A. We think they do.

Q. Regardless of the position of the cone?

A. That's right.

Q. Even if the cone is adjacent to the base outlet of the vibrating member?

A. Yes."

The court was required to interpret the phrase, "extending substantially to the said inlet opening." This must have presented a perplexing problem, but it is not discernible how the court could have made such determination except by utilizing the evidence before it. As stated, the only positive testimony was the opin-

ion of Fischer, and we cannot hold that the court erred in basing its finding and conclusion thereon. It follows that defendant's devices wherein the apex of the cone comes within one inch of the inlet opening of the vibrating material-receiving means, infringe; otherwise, they do not.

Finally, plaintiffs argue that if the agitating means were lowered from one inch below the inlet to halfway down from the inlet, the combination would function in substantially the same way to obtain substantially the same result. This argument is based on the doctrine of equivalents, and, if accepted, would emasculate or negate the doctrine of file wrapper estoppel. We know of no authority, and doubt if there is any, which would support this argument.

The judgment of the district court adjudicating and decreeing the claims of the patent in suit invalid and dismissing plaintiffs' complaint for infringement thereof is

Affirmed.