Eugene A. WAHL and Vibra Screw, Inc., Plaintiffs-Appellants,

v.

VIBRANETICS, INC., Defendant-Appellee.

No. 72–1661.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 13, 1972.

Decided March 2, 1973.

---

Dugald S. McDougall, Chicago, Ill., J. Leonard Walker, Louisville, Ky., Dugald S. McDougall, Chicago, Ill., on brief for plaintiffs-appellants; Percy Foreman, Houston, Tex., of counsel.

Thomas F. McWilliams, Chicago, Ill., for defendant-appellee, M. Brooks Senn, Louisville, Ky., Thomas F. McWilliams, Chicago, Ill., on brief for defendant-appellee; Brown, Miller, Alagia & Senn, Louisville, Ky., Mann, Brown, McWilliams & Bradway, Chicago, Ill., of counsel.

Before MILLER and KENT, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

KENT, Circuit Judge.

On March 16, 1965, plaintiff Wahl [the parties will be referred to as in the court below] was granted Patent No. 3,173,583 on a "bin activator," a device which attaches to the bottoms of storage bins or hoppers and by imparting vibrations to the hoppers or bins, facilitates the flow of powdered, granular, pulverized or like material out of the bins or hoppers.

On November 1, 1965, plaintiffs commenced an action against Carrier Manufacturing Co., Inc. in the United States District Court for the Southern District of Indiana, alleging infringement of that patent. Trial of the case commenced on November 6, 1967, and continued through November 14, 1967, when it was adjourned until August 19, 1968, to enable the plaintiffs to prepare rebuttal to the proofs offered by the defendant. Such proofs were offered on August 19, 1968. On November 5, 1969, United States District Judge William E. Steckler, Chief Judge of the Southern District of Indiana, entered judgment for the defendant, after concluding that the patent in suit was invalid. The judgment of the District Court was af-

firmed, Wahl v. Carrier Mfg. Co., 452 F.2d 96 (7th Cir. 1971), and the application for certiorari was denied, 405 U.S. 990, 92 S.Ct. 1255, 31 L.Ed.2d 457 (1972). On December 18, 1970, after judgment of invalidity had been entered in the District Court for the Southern District of Indiana, the present suit for infringement of the same patent was filed in the United States District Court for the Western District of Kentucky. The defendant filed a timely answer claiming invalidity and lack of infringement, and on December 21, 1971, amended its answer to include a claim that the plaintiffs were estopped from suing for infringement by the prior Indiana judgment of invalidity.

Subsequently, defendant filed a motion for summary judgment based upon the same claim of estoppel. The claim of estoppel relies upon the doctrine announced by the Supreme Court in Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). In support of its motion for summary judgment, based upon estoppel, the defendant attached a copy of the transcript (1,300 pages) and record of the litigation in the United States District Court for the Southern District of Indiana, and a certified copy of the 600-page appendix, filed in the United States Court of Appeals for the Seventh Circuit. Plaintiffs filed nothing in opposition to the motion for summary judgment except a reply which alleged various deficiencies and errors in the Indiana litigation, which plaintiff claimed made the application of the *Blonder-Tongue* doctrine inappropriate.

The District Judge examined the transcript and record of the Indiana litigation and granted the motion for summary judgment. From that action this appeal is taken.

In this Court plaintiffs claim to be entitled to a trial to determine whether there were deficiencies in the prior Indiana litigation which would remove the instant case from the application of the doctrine enunciated in *Blonder-Tongue*.

At the outset we point out that plaintiffs' entire reliance is on the pleadings and that nothing in support of such pleadings has ever been filed. Rule 56(e), Rules of Civil Procedure, provides in part:

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

Plaintiffs not only did not respond by affidavit or otherwise to the defendant's motion for summary judgment in any manner contemplated by Rule 56(e), but filed only a reply which does not "set forth specific facts showing that there is a genuine issue for trial," as required by Rule 56(e). We are, therefore, only concerned with one issue: Was summary judgment appropriate under the circumstances of this case?

In Triplett v. Lowell, 297 U.S. 638, 56 S.Ct. 645, 80 L.Ed. 949 (1936), in discussing estoppel in patent litigation, the Supreme Court said at page 644, 56 S. Ct. at page 648:

"We conclude that neither the rules of the common law applicable to successive litigations concerning the same subject matter, nor the disclaimer statute, precludes relitigation of the validity of a patent claim previously held invalid in a suit against a different defendant."

In discussing the *Triplett* rule in *Blonder-Tongue*, the Supreme Court said:

"Thus, we conclude that *Triplett* should be overruled to the extent it forecloses a plea of estoppel by one facing a charge of infringement of a patent that has once been declared invalid." 402 U.S. at 350, 91 S.Ct. at 1453.

The Court, however, made it clear that mere prior adjudication of invalidity in and of itself would not necessarily require a termination of a subsequent lawsuit between different parties. In that connection the Court stated:

"Moreover, we do not suggest, without legislative guidance, that a plea of estoppel by an infringement or royalty suit defendant must automatically be accepted once the defendant in support of his plea identifies the issue in suit as the identical question finally decided against the patentee or one of his privies in previous litigation. Rather, the patentee-plaintiff must be permitted to demonstrate, if he can, that he did not have 'a fair opportunity procedurally, substantively and evidentially to pursue his claim the first time.' Eisel v. Columbia Packing Co., 181 F.Supp. 298, 301 (Mass. 1960). This element in the estoppel decision will comprehend, we believe, the important concerns about the complexity of patent litigation and the posited hazard that the prior proceedings were seriously defective.

Determining whether a patentee has had a full and fair chance to litigate the validity of his patent in an earlier case is of necessity not a simple matter. In addition to the considerations of choice of forum and incentive to litigate mentioned above, certain other factors immediately emerge. For example, if the issue is nonobviousness, appropriate inquiries would be whether the first validity determination purported to employ the standards announced in Graham v. John Deere Co., [383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545] *supra*; whether the opinions filed by the District Court and the reviewing court, if any, indicate that the prior case was one of those relatively rare instances where the courts wholly failed to grasp the technical subject matter and issues in suit; and whether without fault of his own the patentee was deprived of crucial evidence or witnesses in the first litigation. But as so often is the case, no one set of facts, no one collection of words or phrases, will provide an automatic formula for proper rulings on estoppel pleas. In the end, decision will necessarily rest on the trial courts' sense of justice and equity." 402 U.S. at 332–334, 91 S.Ct. at 1444 (footnotes omitted).

Boutell v. Volk, 449 F.2d 673, 678 (10th Cir. 1971) the test was summarized as follows:

"*Blonder-Tongue* . . . [simply held] that adjudication of *invalidity* of a patent following a full and fair hearing in which the defender of the patent had an adequate opportunity to present his case in support of validity would be final."

■ It is apparent from these quotations that there must be something more than proof of *existence* of prior litigation of the same patent, resulting in an adjudication of infringement, before a patentee may be foreclosed from trial of a subsequent action involving the same patent. Under the principles announced, necessarily, there must be a balancing of the equities on a case by case basis.

Plaintiffs' first contention is that the District Court for the Southern District of Indiana, the Court of Appeals for the Seventh Circuit, and, by implication, the Supreme Court of the United States, when it denied certiorari, "wholly failed to grasp the technical matter and issues in suit." In the brief in this Court the plaintiffs state:

"Those courts held plaintiffs' patent 'anticipated' by prior art dealing with *feeder mechanisms*; plaintiffs stand ready to prove the courts' misconception of the technical subject matter by proving that feeder mechanisms are machines radically different in structure, operation, and function from the bin activators to which plaintiffs' patent is actually directed. The District Court in this case, however, gave plaintiffs no chance to offer such proof; instead, by a process of reasoning wholly unrevealed, it held (App. 30) that the trial judge in the

*Carrier* case made his conclusions of fact 'with an intelligent understanding of the technical issues involved'." Plaintiffs' brief, p. 10.

Nothing is offered in support of this claim and the same issues were presented and disposed of in the appeal to the Seventh Circuit. Similarly, it was claimed in the Seventh Circuit that Judge Steckler did not understand the invention. In disposing of that claim the Court of Appeals for the Seventh Circuit had the following to say:

"Plaintiffs on brief state the contested issues as follows:

'I. Was it reversible error for the District Court to adopt the overly simplistic definition of the Wahl invention urged by defendant on the validity issue, and then predicate its finding of anticipation (by three separate items of prior art) and obviousness on that definition rather than on a fair reading of the Wahl claims in context?'

\*  \*  \*  \*  \*  \*

"It appears to us that issue I is stated in a rather novel manner. However stated, we think the ultimate issue is whether the court's findings of fact are clearly erroneous. Rule 52(a) of the Federal Rules of Civil Procedure provides in part:

'Findings of Fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.'

\*  \*  \*  \*  \*  \*

"The record refutes the suggestion that Judge Steckler was led astray. It reveals that he was keenly aware of the issues for decision and the contentions of the respective parties, and actively participated in the examination of the expert witnesses. He required each side to submit proposed findings and conclusions of law, upon which arguments were heard. At the conclusion of such arguments counsel for both sides were invited to the court's chambers for a discussion concerning

the findings and conclusions of law proposed by defendant. The court required of defendant numerous changes in its proposal, as evidenced by the court's entry of August 6, 1969, 'Court met with counsel in chambers concerning the finalization of findings of fact and conclusions of law and indicated to counsel its objections to the proposed findings of fact and conclusions of law tendered by defendant and made suggestions for amendments thereof. Counsel for defendant is to prepare for submission to Court amended proposed findings of fact and conclusions of law and is to provide a copy to plaintiffs before filing the same with the Court.' Defendant's proposal, amended to meet the requirements of the court was adopted on November 5, 1969." 452 F.2d at 98–99.

The Supreme Court in *Blonder-Tongue* pointed out that the occasions when trial courts and Courts of Appeals would fail to grasp the technical subject matter of the patent in suit would be "relatively rare." 402 U.S. 333, 91 S.Ct. 1434. In this case the District Court for the Western District of Kentucky and this Court have had available for examination the entire transcript and record of the litigation in the Southern District of Indiana, as well as the appendix filed on appeal with the Court of Appeals for the Seventh Circuit. The District Judge below examined the material available and concluded that Judge Steckler had an excellent grasp of the technical matters involved, that he applied the appropriate standards and that the plaintiff was afforded a clear opportunity to offer any and all available evidence. No claim is asserted in this Court that the plaintiffs have any additional or new evidence which they were prevented from presenting in the prior litigation.

In essence all that the plaintiffs' counsel claims is that he could have done a better job of cross-examining Dr. Fischer, the defendant's expert witness, than was done by plaintiffs' counsel in the

Indiana litigation. Such a claim has little appeal to this Court. We recognize that any lawyer can by hindsight form opinions as to how he might have done a better job. We do not understand this to be the thrust of the crack in the door left by *Blonder-Tongue.* Plaintiffs presented criticism of Dr. Fischer's testimony to the Seventh Circuit Court of Appeals which disposed of that claim in the following manner:

> "Plaintiffs in their reply brief state that the district court did not 'understand the concept of Wahl's claimed invention and how it differs from the prior art,' and that he was 'deceived * * * aided and abetted by a Professor Fischer, whose professorial charisma was relied on by defendant to legitimatize defendant's courtroom ploy.'
>
> \* \* \* \* \* \*
>
> "It was that court's function, not ours on review, to weigh the conflicting testimony and judge of the credit to be given the witnesses. We are satisfied that the court properly performed its duty in this respect. Certainly we cannot hold that the finding was clearly erroneous under Rule 52(a)." 452 F.2d at 99, 102.

■ We, therefore, conclude that these plaintiffs "had a full and fair chance to litigate the validity of their patent" in the Southern District of Indiana.

In the Indiana litigation plaintiffs made the choice of the forum in which they desired to assert the validity of their patent. It appears from the record that Carrier Manufacturing Co., Inc., the defendant in the Indiana case, is a Kentucky corporation having its principal place of business at Jeffersonville, Indiana. Thus under the provisions of Title 28 U.S.C. § 1391(c),[1] and

Title 28 U.S.C. § 1400(b)[2] the action could have been instituted in a District Court in Kentucky or in the District Court in Indiana. It may be that plaintiffs selected the Indiana forum because they had previously prevailed in patent litigation against the same defendant and involving similar machinery and technology before the same judge. Wahl v. Carrier Mfg. Co., 358 F.2d 1 (7th Cir. 1966). Presumably, the plaintiffs had no complaint about Judge Steckler's understanding of patent litigation at the time of the prior case.

■ We recognize that summary judgment, Rule 56, Rules of Civil Procedure, should be granted only in the exercise of great restraint. Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962); C. F. W. Construction Co. v. Travelers Insurance Co., 363 F.2d 557 (6th Cir. 1966). However, summary judgment is proper where a trial would serve no useful purpose. Miller v. Western Board of Adjusters, Inc., 427 F.2d 175 (9th Cir. 1970); Applegate v. Top Associates, Inc., 425 F.2d 92 (2nd Cir. 1970); Bland v. Norfolk and Southern Railroad Co., 406 F.2d 863 (4th Cir. 1969); and as said by this Court in Rogers v. Peabody Coal Co., 342 F.2d 749, 751 (6th Cir. 1965):

> "It is clear that where a moving party supports his motion for summary judgment by appropriate means, which are uncontroverted, the trial judge is fully justified in granting relief thereon."

■ Plaintiffs' counsel suggest in their briefs that they should have been accorded a *trial* for the purpose of determining whether or not the prior trial in the District Court in Indiana, which resulted in the adjudication of invalidity, awarded to the plaintiffs a full and

---

1. 28 U.S.C. § 1391(c). "A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes."

2. 28 U.S.C. § 1400(b). "Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."

fair opportunity under appropriate procedure to present all evidence and witnesses in support of the patent in suit. If we were to accept this theory the whole purpose of the rule laid down by the Supreme Court in *Blonder-Tongue* would be defeated. We, therefore, hold that such a trial is neither necessary nor advisable in a case such as this where the court in which the subsequent action is pending has available the record from the prior litigation from which it can determine whether the claim of estoppel rests upon a firm foundation based on the requirements laid down in *Blonder-Tongue*.

The judgment of the District Court is affirmed.